IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS ALFREDO SANTIAGO-SEPÚLVEDA, et al., | |
| Plaintiffs | CIVIL 08-1950 (CCC) |
| | CIVIL 08-1986 (CCC) |
| v. | CIVIL 08-2025 (CCC) |
| | CIVIL 08-2032 (CCC) |
| ESSO STANDARD OIL COMPANY | CIVIL 08-2044 (CCC) |
| (PUERTO RICO), INC., et al., | |
| Defendants | |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment by certain gasoline retailer counter defendants against Total Petroleum Puerto Rico, Inc. ("Total" or "TPPRC") and Esso Standard Oil Company (Puerto Rico), Inc. ("Esso"). (Docket No. 155.) Total filed its first counterclaims on September 26 and 27, 2008 (Docket Nos. 52-56), and submitted its third amended counterclaims —its most recent— on December 4, 2008. (Docket No. 172.) Esso filed its most recent (amended) counterclaims on October 2 and 3, 2008. (Docket Nos. 68-70, 78, 79.) Counter defendants from case numbers 08-1950 and 08-2025 filed this motion for summary judgment on November 24, 2008, (Docket No. 155), and counter defendants from case 08-1986 joined in this motion the next day. (Docket Nos. 157 & 166.) After three extensions of time to file a reply brief, Total submitted its reply on February 17, 2009. (Docket No. 221.)

CIVIL 08-1950 (CCC)                          2
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

I.      FACTUAL AND PROCEDURAL BACKGROUND

        In March 2008, Esso announced its intention to terminate its Puerto Rico gasoline retail franchises on September 30, 2008.  The company later changed the termination date to October 31, 2008.  (Docket No. 41.)  On August 26, 2008, a large group of Esso franchisees filed a complaint under the Petroleum Marketing Practice Act ("PMPA") (15 U.S.C. § 2801 *et seq*.) against Esso to enjoin it from terminating the franchises.  (Docket No. 2.)  Total was not named as a defendant in that complaint.  Four other complaints were subsequently filed in four separate cases, all of which were consolidated into this one.  Total was a named defendant in two of those cases (Civil No. 08-1986, Docket No. 1; Civil No. 08-2032, Docket No. 1), but was not named in the other two.  (Civil No. 08-2025, Docket No. 1; Civil No. 08-2044, Docket No. 1.)  On September 4, the retailer plaintiffs in the consolidated case (Civil No. 08-1950) moved for a preliminary injunction to prevent Esso from terminating their franchises.  (Docket No. 7.)  Total moved to intervene in the consolidated case on September 9, 2008, as the motion for preliminary injunction posed a threat to its plans to purchase the gasoline retail franchises that Esso sought to terminate.  (Docket No. 10.)  On October 9, 2008, I granted Total's motion.  (Docket No. 91.)      In early October, certain

CIVIL 08-1950 (CCC)                         3
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

franchisees reached an agreement with Total, and on October 7, 2008, I entered a modified order binding the parties to the agreement.  (Docket No. 81.)  The modified order provided that the plaintiffs in cases 08-2032 and 08-2044 were to sign agreements with Total whereby the corporate name Total would substitute the corporate name Esso in all agreements then existing between Esso and those plaintiffs.  (Id. at 1.)  The duration of the newly formed agreements was to be three (3) years from November 1, 2008.  (Id.)  No parties to the agreement waived any rights or claims accrued to that date or in the future under the PMPA or any other applicable federal or local law or regulation.  (Id. at 2.)  This Court retained "strict supervisory powers over compliance by the parties with the terms of th[e] order." (Id.)  The order provided that "Esso and Total will continue to be parties in these cases until final resolution of the respective causes of action, or until an agreement with all Plaintiffs has been reached and approved by this Court."  (Id. at 2-3.)

As to the original plaintiffs not involved in this agreement, I issued an Opinion and Order denying their motion for preliminary injunction on October 18, 2008.  (Docket No. 118.)  On October 29, 2008, plaintiffs in case 08-1986 announced that they had agreed to accept the franchise agreements offered by

CIVIL 08-1950 (CCC)                                    4
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)


Total.  (Docket No. 146.)  Between that date and October 31, 2008, all but two of those plaintiffs signed agreements with Total.  (Docket No. 157.)   The remaining two parties simply turned over their retail stations to Esso.  (Id.)

Now that all or nearly all of the original plaintiffs have settled with Total in one fashion or another,[1] Total focuses its pending counterclaims on those plaintiffs that have allegedly continued to operate their gasoline stations without accepting the terms of a franchise agreement with Total (so called "Non-Franchise Plaintiffs")[2].  (Docket No. 172, at 4.)  These Non-Franchise Plaintiffs consist of Delmaried, Inc., Santos Pabón, José Pabón, Sixto Pabón, Juan Quevedo, Fernando Martínez, Julio López, and Javier Torres Caraballo.  (Id.)  The Non-Franchise Plaintiffs are all plaintiffs from the case originally filed as 08-1950.  (Docket No. 2, at 1-2.)  Total also directs its counterclaims at those gasoline retailers that were not parties to the underlying suit against Esso but who are also alleged to

_____

[1] Total implicitly acknowledges that all original plaintiffs not among the Non-Franchise Plaintiff group have entered into franchise agreements.  (Docket No. 172, at 4, ¶ 4) ("The Original Plaintiffs are comprised of a group of retailers whom [sic] have entered into franchise agreements with TPPRC . . . and . . . another group of retailers . . . [called the] Non-Franchisee Plaintiffs.").

[2] Total also refers to this group, inconsistently, as "Non-Franchise *Defendants*" at times in its counterclaim.  (See, e.g., Docket No. 172, at 5, ¶ 4) (emphasis added).)

CIVIL 08-1950 (CCC)                        5
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

be continuing to operate their gasoline stations without agreeing to Total's franchise terms (so called "Non-Plaintiff Retailers"). (Id. at 5, ¶ 5.) Total has filed a separate motion to join the latter parties as defendants to its counterclaim. (Docket No. 177.) That motion remains outstanding and will be addressed separately. Total has also moved for a preliminary injunction seeking almost identical relief to the injunctive remedies sought in its counterclaim. (Docket No. 181.) That motion will be addressed separately as well.

There are nine claims for relief in the third amended complaint. The first three are primarily directed at the Non-Franchise Plaintiffs and Non-Plaintiff Retailers. They seek an order enjoining the continued use of their gasoline stations and equipment contained therein. (Docket No. 172, at 24-31, ¶¶ 72-99.) They rely on Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)), Section 43(c) of that Act, the Federal Trademark Dilution Act of 1995 (15 U.S.C. § 1125(c)), and 15 U.S.C. § 2806 of the PMPA. (Id.) The fourth[3] and seventh claims for relief seek declaratory judgments essentially holding that Esso and Total complied with the provisions of the PMPA in terminating Esso's franchise agreements, and that the terms of the new agreements offered by Total comply

---

[3] The fourth claim for relief explicitly states that "is aimed at the Plaintiffs in cases 08-2032 and 08-2044." (Docket No. 172, at 32, ¶ 104.)

CIVIL 08-1950 (CCC)                    6
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

with local and federal law.  (Id. at 31-32, 34.)  The fifth claim asserts that Total

has been deprived of revenue and market share because of  counter defendants'

"interference with a contract o[f] expectancy, which has resulted in [Total's]

inability to sell its products from the gasoline service stations after the

September 30, 2008 termination date . . . ." (Id. at 32-33, ¶ 106.)  For this, Total

seeks damages of $1.1 million.   The sixth claim seeks indemnification from

counter defendants in the event Total should be sued for any actions or omissions

of counter defendants as gasoline retailers.  (Id. at 33, ¶ 109.)  The eighth claim

seeks the return of gasoline station equipment to Total and requests damages to

compensate Total for the equipment's unauthorized use.  (Id. at 35, ¶ 114.)

Finally, the ninth claim seeks repayment of a loan made out to counter

defendants, Santos, José and Sixto Pabón.  (Id. at 36.)  Total also seeks payment

for the full value of gasoline station equipment as an alternative to a return of that

equipment to Total, and requests a speedy hearing under Federal Rule of Civil

Procedure 57.  (Id. at 38-39.)

II.    STANDARD OF REVIEW

        Summary judgment "should be rendered if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue

CIVIL 08-1950 (CCC)                          7
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

as to any material fact and that the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c).  It is therefore the moving party's burden to show

"an absence of evidence to support the nonmoving party's case." Napier v. F/V

Deesie, Inc., 454 F.3d 61, 66 (1st Cir. 2006) (quoting Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986)).  "A genuine issue exists when, based on the evidence,

a reasonable jury could resolve the issue in favor of the non-moving party." Id.

(citing Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co. of P.R., 167 F.3d 1, 7

(1st Cir. 1999)).  "Further, a fact is material if it has the 'potential to affect the

outcome of the suit.'" Id. (quoting Santiago-Ramos v. Centennial P.R. Wireless

Corp., 217 F.3d 46, 52 (1st Cir. 2000)).  "[T]he role of the court at the summary

judgment stage is to 'examine[ ] the entire record "in the light most flattering to

the nonmovant and indulge all reasonable inferences in that party's favor."'"

Napier v. F/V Deesie, Inc., 454 F.3d at 66 (quoting Cadle Co. v. Hayes, 116 F.3d

957, 959 (1st Cir. 1997) (quoting Maldonado-Dennis v. Castillo-Rodríguez, 23

F.3d 576, 581 (1st Cir. 1994)).

III.    DISCUSSION

        While this case has been consolidated, it nonetheless stems from five unique

underlying cases.  Total is a defendant in some of the underlying cases and an

CIVIL 08-1950 (CCC)                                    8
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

intervenor in others.  Total has reached an agreement with the original plaintiffs

in some cases but not others.  Because these distinctions materially affect the

outcome of counter defendants' motion for summary judgment, I partition this

opinion and order accordingly.

   A.    Cases 08-1950 and 08-2025

      In cases 08-1950 and 08-2025, the original plaintiffs neither named Total

as a defendant nor entered into any agreement with it.  The counterclaims in

these two cases are divisible into two classes:  those that fall outside the scope

of the underlying litigation between the principal parties (Esso and the original

plaintiffs) and those that fall within that scope.  Those appearing to fall outside

that scope are claims 1-3, 5, 6, 8, and 9.  The primary issue is whether Total, an

intervenor, is entitled to bring these claims, given that they appear to fall outside

the scope of the underlying litigation.  The remaining two claims raise issues that

fall within the scope of the underlying litigation, and will be addressed individually

after the primary issue is dealt with.

   1.    Permissible Scope of Intervenor's Argument

      An intervening party "may argue only the issues raised by the principal

parties and may not enlarge those issues."  Southwestern Pa. Growth Alliance v.

CIVIL 08-1950 (CCC)                      9
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

Browner, 121 F.3d 106, 121 (3d Cir. 1997) (citing Vinson v. Washington Gas Light

Co., 321 U.S. 489, 498 (1944) ("an intervenor is admitted to the proceeding as

it stands, and in respect of the pending issues, but is not permitted to enlarge

those issues . . . ")).  "Intervenors may only argue issues that have been raised

by the principal parties; they simply lack standing to expand the scope of the case

to matters not addressed by the petitioners in their request for review."  Nat'l

Ass'n of Regulatory Util. Comm'rs v. Interstate Commerce Comm'n, 41 F.3d 721,

729 (D.C. Cir. 1994) (citing Illinois Bell Tel. Co. v. FCC, 911 F.2d 776, 786 (D.C.

Cir. 1990)).  Only in "extraordinary cases" may the court depart from this rule.

Id. at 729-30 (citing Synovus Fin. Corp. v. Bd. of Governors of Fed. Reserve Sys.,

952 F.2d 426, 433 (D.C. Cir. 1991) (granting an exception where intervenor

sought to raise a potentially outcome determinative issue already fully litigated in

previous proceedings before a federal agency) and Lamprecht v. FCC, 958 F.2d

382, 389 (D.C. Cir. 1992)).  One policy motive behind this rule is to prevent

intervenors from circumventing statutory time limitations.  Lamprecht v. FCC, 958

F.2d at 389 (citing Illinois Bell Tel. Co. v. FCC, 911 F.2d at 786).

  In cases 08-1950 and 08-2025, Total is merely an intervenor.  The principal

parties are Esso and the plaintiff franchisees.  Not once in any of these principal

CIVIL 08-1950 (CCC)                              10
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

parties' pleadings or oral representations before the court has there appeared any mention of the Lanham Act, or of potential claims against any gasoline retailers for continuing operation beyond the October 31, 2008 franchise termination deadline. Indeed, such arguments by Total raise issues separate and distinct from the underlying issue of the case. The underlying issue was identified by Total itself in its motion for intervention: "The core or heart of this complaint is the franchise agreements offered by Total to Plaintiffs. Everything else hinges upon these contracts and whether the franchise offering was made in compliance with the PMPA." (Docket No. 10, at 13, ¶ 36.) That issue has already been decided. (Docket Nos. 118 & 197) (finding Esso and Total in compliance with the PMPA). The issues now put forth by Total, on the other hand, are wholly distinct in that they pertain to what happens *after* termination has occurred and been approved by this court. Allowing Total to address them would effectively grant an impermissible "enlargement" of the case by an intervenor. Southwestern Pa. Growth Alliance v. Browner, 121 F.3d at 121 (citing Vinson v. Washington Gas Light Co., 321 U.S. at 498).

Total also seeks to join to its counterclaim individual gasoline retailers that were not parties to the original litigation. (Docket No. 177.) Thus, not only does

CIVIL 08-1950 (CCC)                                11
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

the intervenor seek expansion of the issues, but it also seeks expansion of the

parties.  One factor weighing against permission of a counterclaim is the addition

of new parties.  Cf. Spencer v. Newton, 79 F.R.D. 367, 373 (D. Mass. 1978) (lack

of additional parties favors permission to assert counterclaim).  Total is effectively

seeking to create a separate case within a case.  Total is an intervenor naming

new parties and raising new issues that were not raised by the principal parties.

Those issues may not now be addressed by this court.

   2.   Scope Granted by the Order Allowing Intervention

      My order granting Total's motion to intervene on October 9, 2008 did not

confer the right to raise issues outside of franchise termination under the PMPA.

(Docket No. 91.)  Federal Rule of Civil Procedure 24 provides in pertinent part:

>        (a)   Intervention of Right. On timely motion, the court
>              must permit anyone to intervene who:
>              (1)   is given an unconditional right to intervene
>                    by a federal statute; or
>              (2)   claims an interest relating to the property or
>                    transaction that is the subject of the action,
>                    and is so situated that disposing of the action
>                    may as a practical matter impair or impede
>                    the movant's ability to protect its interest,
>                    unless existing parties adequately represent
>                    that interest.
>
>        (b)   Permissive Intervention.

CIVIL 08-1950 (CCC)                          12
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

> (1)   In General. On timely motion, the court may
>        permit anyone to intervene who:
>        (A)   is given a conditional right to intervene
>              by a federal statute; or
>        (B)   has a claim or defense that shares with
>              the main action a common question of
>              law or fact.

Fed. R. Civ. P. 24(a)(1)(2), (b)(1)(A)(B).   A court is within its discretion to limit

the scope of an intervenor's intervention.   Walsh v. Walsh, 221 F.3d 204, 213 (1st

Cir. 2000).

        The order granting intervention stated that "the right to become the

franchisor to 161 gas stations is in question."  (Docket No. 91, at 5.)  In other

words, it recognized that Total claimed an interest relating to the transaction that

was the subject of the underlying action.   Accordingly, the order stated that

intervention under Rule 24(a)(2) —intervention as of right— was most

appropriate.  (Id. at 2.)  The court made clear, however, that the reason for

allowing intervention was to allow Total to elucidate the issue of whether the

franchise agreements offered to Total were nondiscriminatory under the PMPA:

> Total has an exclusive understanding of the new franchise
> contracts it has offered to plaintiffs.  It can better address
> the issue of whether those contracts were discriminatory
> than Esso can . . . .

CIVIL 08-1950 (CCC)                            13
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

(Id. at 7.)  The order said nothing about any right of Total to inject into the case any disputes it had with individual gasoline retailers over branding, retail station occupancy, or equipment usage.  Total was allowed to intervene to address the question of Esso's compliance with the PMPA, not to address its own issues with individual gasoline retailers.  As the October order did not give Total permission to intervene on the subject of branding or eviction issues, so this order denies such permission now.

    3.   Compulsory Versus Permissive Counterclaim

    Total has submitted lengthy discussions urging a finding that its counterclaim is compulsory.  (Docket Nos. 177 & 207.)  This matter is relevant in that Total could be estopped from bringing its claims against the counter defendants upon my dismissal of the counterclaim if it were compulsory.  The counterclaim is not, however, compulsory, and Total is free to bring its claims against counter defendants in  separate actions.  Rule 13 of the Federal Rules of Civil Procedure provides the following:

              (a)   Compulsory Counterclaim.

                    (1)   In General. A pleading must state as a
                          counterclaim any claim that--at the time of
                          its service--the pleader has against an
                          opposing party if the claim:

1   CIVIL 08-1950 (CCC)                          14
2   CIVIL 08-1986 (CCC)
3   CIVIL 08-2025 (CCC)
    CIVIL 08-2032 (CCC)
4   CIVIL 08-2044 (CCC)

5

6               (A)   arises out of the transaction or occurrence
7                     that is the subject matter of the opposing
                      party's claim; and
8               (B)   does not require adding another party over
9                     whom the court cannot acquire jurisdiction.

10                    . . .

11          (b)   Permissive Counterclaim.  A pleading may state as
12                a counterclaim against an opposing party any claim
                  that is not compulsory.

13  Fed. R. Civ. P. 13(a), (b).  Under Rule 13(a)(1), "[a] counterclaim that . . . did not
14
15  accrue or mature until after service of the responsive pleading (i.e., the answer),
16  is not compulsory in the action."  3-13 Edward F. Sherman & Mary P. Squiers,
17  Moore's Federal Practice - Civil § 13.13 (2008) (citing Burlington N. R.R. Co. v.
18  Strong, 907 F.2d 707, 712 (7th Cir. 1990) ("Even when a counterclaim meets the
19
20  'same transaction' test, a party need not assert it as a compulsory counterclaim
21  if it has not matured when the party serves his answer.")); see also Chemetron
22  Corp. v. Cervantes, 92 F.R.D. 26, 28 (D.P.R. 1981) ("Rule 13(a) of the Federal
23  Rules of Civil Procedure, requires . . . a pleader to state a counterclaim that he
24
25  has against an 'opposing party' at the time he serves his pleading.") (emphasis
26  added).

27

28

CIVIL 08-1950 (CCC)                          15
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)


Here, Total filed its answer on September 26, 2008.  (Docket No. 52.)  At that time, the franchise termination deadline of October 31 had not passed, and no cause of action against any holdout retailers had yet accrued.  Thus, because Total's cause of action did not accrue or mature until after the service of Total's answer, the counterclaim is not compulsory.

Even assuming, *arguendo*, that these circumstances did not make the counterclaim permissive, the counterclaim still does not arise out of the same transaction or occurrence as the primary claim.  The reason for this is much the same as the reason enunciated above as to why Total, as intervenor, may not be heard on its counterclaim:  the counterclaim involves a different statute, a different set of facts, different evidence, and different parties.

> There are at least four tests to determine whether a counterclaim is compulsory or permissive:
>
> 1)   Are the issues of fact and law raised by the claim and counterclaim largely the same?
>
> 2)   Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?
>
> 3)   Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

CIVIL 08-1950 (CCC)                              16
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)


> 4)   Is there any logical relation between the claim and
>        the counterclaim?

Iglesias v. Mut. Life Ins. Co. of N.Y., 156 F.3d 237, 241 (1st Cir. 1998) (quoting

McCaffrey v. Rex Motor Transp., Inc., 672 F.2d 246, 248 (1st Cir. 1982) (quoting

6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and

Procedure § 1410, at 42 (1971)).

        The first three tests all clearly favor a finding that Total's counterclaim is

permissive.  As to the first test, the issues of law differ in that the underlying

claim invokes the PMPA, while the Lanham Act and general contract law control

the counterclaim.  Additionally, the factual question of compliance with the PMPA

differs significantly from the question of whether the retailers are debranding

Total's brand name or whether they are unlawfully occupying Total's land or

equipment.  As to the second test, Total's efforts to enjoin the retailers from

continued operation would not be dismissed as *res judicata* because of our

decision finding Esso in compliance with the PMPA.  The latter has no bearing on

the former.  Third, the evidence presented in the underlying trial —of fair notice

to the franchisees, of a good faith reason for termination by Esso, and of

nondiscriminatory offers by Total— would be insufficient to support Total's

CIVIL 08-1950 (CCC)                    17
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

counterclaim that it has a right to equipment in counter defendants' possession

or that its brand equity is being diminished by counter defendants' actions.

Only the fourth test remains.  It is the only test that presents a close

question as to the nature of Total's counterclaim.  Under this test, a counterclaim

is compulsory only if:

> it arises out of the same aggregate of operative facts as
> the original claim in two senses: (1) that the same
> aggregate of operative facts serves as the basis of both
> claims; or (2) that the aggregate core of facts upon which
> the original claim rests activates additional legal rights in
> a party defendant that would otherwise remain dormant.

Iglesias v. Mutual Life Ins. Co. of N.Y., 156 F.3d at 242 (quoting McCaffrey v. Rex

Motor Transp., Inc., 672 F.2d at 249 (quoting Revere Copper & Brass, Inc. v.

Aetna Cas. & Sur. Co., 426 F.2d 709, 715 (5th Cir. 1970)).  The first formulation

can be dismissed easily, as different facts serve as the basis for the two claims.

As to the second, Total might argue that the "core set of facts" upon which the

retailers' original action relied was responsible for "activating" Total's right to take

ownership of the franchises.  It might argue that the *facts* of the original plaintiffs'

action (i.e., Esso was terminating its franchises) against Total "activated" Total's

rights against counter defendants that are asserted here.  Ultimately, however,

Esso's *termination* of its franchises did not give Total the ability to exert rights

CIVIL 08-1950 (CCC)                                    18
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

over the counter defendants; rather, Esso's *transfer of ownership* of its Puerto Rico gasoline enterprise (i.e., facilities, equipment, infrastructure) conferred those rights on Total.  Accordingly, this test also renders the result that the counterclaim is permissive.

It is also significant that in actually applying this fourth test, the court of appeals has asked whether "the original *claim*" (as opposed to the original *facts*) activated an "otherwise dormant claim."  Iglesias v. Mut. Life Ins. Co. of N.Y., 156 F.3d at 242; McCaffrey v. Rex Motor Transp., Inc., 672 F.2d at 249.  Under this formulation, therefore, our question is whether the original legal action itself, which sought to enjoin the termination of their franchises, awakened Total's right to later prevent those franchisees from misusing its brand and its stations.  I find the answer to be no.  Total assumed the right to assert itself against counter defendants when Esso's franchise agreements terminated and the two oil companies legally contracted for the sale of the Puerto Rico gasoline enterprise. That the franchisees filed an action to stop Esso played no role in advancing Total's ability to bring its claims against those franchisees.  Thus, the fourth test requires a holding that Total's counterclaim is permissive.

CIVIL 08-1950 (CCC)                    19
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

The technical minutiae of these tests aside, the practicality of deeming the counterclaim permissive is also manifest.  The claims involve different legal standards, different parties, different facts, and different evidentiary considerations.  Judicial economy would not be served by allowing Total to advance its further goals within the framework of this litigation, and reason therefore dictates a finding that the counterclaim is permissive.

In summary, because Total may not raise new issues as an intervenor, its claims for relief numbered 1-3, 5, 6, 8, and 9 must be dismissed as to the counter defendants in cases 08-1950 and 08-2025.  This leaves only claims 4 and 7 in need of adjudication.  Those claims seek declaratory judgments regarding Total's compliance with the PMPA and the legality of the terms of Total's franchise offers, respectively.  As these claims are arguably within the scope of the issues litigated between Esso and the original plaintiffs in the underlying action, Total has a right to raise them.

Total's fourth claim, as well as Esso's only counterclaim, seek a judgment declaring that Esso and Total complied with the PMPA in terminating Esso's franchises.  I have already addressed this issue in the opinion and order denying counter defendants' motion to enjoin the termination of their franchises.  (Docket

CIVIL 08-1950 (CCC)                        20
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

No. 118.)  I held that "Esso has complied with the notice requirements under the

PMPA" and that "Total's offering of nondiscriminatory franchise contracts generally

complies with Esso's obligation to assure that its franchisee is offered a non-

discriminatory contract . . . ."  (Id. at 78); Santiago-Sepúlveda v. Esso Standard

Oil Co. (Puerto Rico), Inc., 582 F. Supp. 2d 154, 185 (D.P.R. 2008).  The only

qualification to this holding was due to "Total's failure to make franchise offers to

franchisees José Antonio Pabón-García, Sixto Pabón-García, and Carmen H.

Mercado-Reyes."  (Id.)  This qualification was nullified, however, when Total cured

the deficiency before the October 31, 2009 termination date, and I so held in an

order granting Total's and Esso's joint motion to alter judgment on January 12,

2009.  (Docket No. 197); Santiago-Sepúlveda v. Esso Standard Oil Co. (Puerto

Rico), Inc., 2009 WL 87586 (D.P.R. Jan. 12, 2009).  As the relief sought in Total's

fourth counterclaim and Esso's only counterclaim have already been granted,

those counterclaims are hereby dismissed as moot.

Finally, claim 7 requests a declaration that the terms of the franchise

agreements offered by Total are valid under federal and state law.  I have already

addressed this issue and need not do so again now.  (Docket Nos. 118 & 197.)

It will suffice to say that Total and Esso have already been deemed compliant with

CIVIL 08-1950 (CCC)                          21
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

the PMPA.  I decline to address the validity of the individual terms of the proposed franchise agreement, as the agreement is, according to its terms, to be interpreted in conformity with the laws of the Commonwealth.  "While [the terms] remain unnegotiable, in a nutshell, they cannot be enforced above the law."  (Docket No. 118, at 73.)  If "property rights are affected by a clause of the franchise agreement which is not negotiable, that . . . is subject to the interpretation of state law."  (Id.); Santiago-Sepúlveda v. Esso Standard Oil Co. (Puerto Rico), Inc., 582 F. Supp. 2d at 184.  This holding will suffice to address Total's seventh  counterclaim, which is dismissed.  Accordingly, the counter defendants of cases 08-1950 and 08-2025 are entitled to summary judgment as to all of Total's and Esso's counterclaims.

     B.    Case 08-1986

     In case 08-1986, Total was a named defendant rather than an intervenor.  As such, it has a right to raise issues outside the scope of Esso's franchise termination.  A review of Total's and Esso's claims for relief, however, reveals that the 08-1986 counter defendants are also entitled to judgment as a matter of law.

     Total's first three claims seek an order under the Trademark Dilution Act, the Lanham Act, and the PMPA enjoining the Non-Franchise Defendants and Non-

CIVIL 08-1950 (CCC)                    22
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

Plaintiff Retailers from continuing to use the occupied gasoline stations and the equipment contained therein.  (Docket No. 172, at 24, ¶¶ 72-99.)  "Federal courts are courts of limited jurisdiction; a court may not address the merits until 'after . . . the court has assumed jurisdiction over the controversy.'"  Iglesias v. Mut. Life Ins. Co. of N.Y., 156 F.3d at 241 (quoting Bell v. Hood, 327 U.S. 678, 681 (1946)).  This is true regardless of whether the parties have raised the issue of jurisdiction.  Iglesias v. Mut. Life Ins. Co. of N.Y., 156 F.3d at 241.  The court has no jurisdiction over a plaintiff that lacks standing.  United Seniors Ass'n, Inc. v. Philip Morris USA, 500 F.3d 19, 26-27 (1st Cir. 2007), cert. denied, 128 S. Ct. 1125 (2008), (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)).   An essential element of standing is "causation—a fairly traceable connection between the plaintiff's injury and the complained—of conduct of the defendant."  Steel Co. v. Citizens for a Better Env't, 523 U.S. at 103 (internal citations and quotations omitted).

        Here, the 08-1986 counter defendants have not used the gasoline stations in the absence of franchise agreements with Total.  They assert that each of them either reached franchise agreements with Total or turned over their retail stations before the October 31, 2008 franchise termination deadline.  (Docket No. 157, at

CIVIL 08-1950 (CCC)                    23
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

5.)  Total fails to contest this assertion, meaning no genuine issue of material fact exists as to this issue.

Moreover, while Total's first three claims make occasional assertions against the generic group of "plaintiffs," the claims are in fact directed almost exclusively at the Non-Franchise Defendants and Non-Plaintiff Retailers.  And the counter defendants in 08-1986 are not among the Non-Franchise Plaintiffs or Non-Plaintiff Retailers.  The latter group is comprised entirely of counter defendants from case 08-1950, and the former is not even a party to this case.  In other words, Total's first three claims are directed at parties other than the 08-1986 counter defendants, and they allege actions that the 08-1986 counter defendants have undisputedly not taken.  Total thus asserts no connection between its alleged injury and any action by the 08-1986 counter defendants, and therefore lacks standing.  There being no genuine issue of material fact, the counter defendants in 08-1986 are entitled to judgment as a matter of law as to these first three claims.

As to Total's fourth and seventh claims, as well as Esso's only counterclaim, my conclusions above regarding these claims vis-à-vis counter defendants of cases 08-1950 and 08-2025 apply equally to the 08-1986 counter defendants.

1
2
3
4

CIVIL 08-1950 (CCC)                    24
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

5
6
7
8
9

My earlier opinions have already addressed Esso's and Total's compliance with the

PMPA, as well as the legality of the terms of the franchise offers made by Total to

counter defendants.  I need not repeat my reasoning here.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

    Total's fifth claim seeks damages against the generically-identified

"[p]laintiffs" for "contract interference" "which has resulted in TPPRC's inability to

sell its products from the gasoline service stations after the September 30, 2008

termination date . . . ."  (Docket No. 172, at 32-33, ¶ 106.)  Total does not

identify the source of law that supports its claim.  Nor does it set forth any

independent jurisdictional basis over the subject matter of the claim, even though

"it is black-letter law that jurisdiction must be apparent from the face of the

plaintiffs' pleading." Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007)

(quoting PCS 2000 LP v. Romulus Telecomms., Inc., 148 F.3d 32, 35 (1st Cir.

1998)).  The parties are not of diverse citizenship —both Total and counter

defendants are citizens of Puerto Rico— and a contract claim such as this one

sounds in state rather than federal law.  Cabán-Hernández v. Philip Morris USA,

Inc., 486 F.3d 1, 11 (1st Cir. 2007) (state contract law falls within the sphere of

state substantive law); Olympic Mills Corp. v. Rivera Siaca (In re Olympic Mills

Corp.), 477 F.3d 1, 6 (1st Cir. 2007) (no independent basis of original federal

28

CIVIL 08-1950 (CCC)                          25
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

jurisdiction on state-law contract claims).  Furthermore, Total may not rely on supplementary jurisdiction for any of these claims, as "[o]nly compulsory counterclaims can rely upon supplemental jurisdiction; permissive counterclaims require their own jurisdictional basis."  Iglesias v. Mut. Life Ins. Co. of N.Y., 156 F.3d at 241.  Here, it is established above that all of Total's counterclaims but the fourth and seventh are permissive rather than compulsory.  Accordingly, there is no subject matter jurisdiction over Total's fifth claim, and it must be dismissed. 28 U.S.C. 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (where no federal claims remain, state claims should be dismissed as well); Fernández Molinary v. Industrias La Famosa, Inc., 203 F. Supp. 2d 111, 114 (D.P.R. 2002) ("If the Court determines that subject matter jurisdiction does not exist it must dismiss the case and not make any determination on the merits of the case.").

The court also lacks subject matter jurisdiction over Total's sixth claim, as Total again is without standing.  The sixth claim seeks indemnification from "any lawsuit or any legal action as a result of any act or omission of Plaintiffs and Non-Plaintiff Retailers . . . . "  (Docket No. 172, at 33, ¶ 109.)  An essential element of standing is  "an 'injury in fact'—a harm suffered by the plaintiff that is 'concrete'

CIVIL 08-1950 (CCC)                                    26
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

and 'actual or imminent, not 'conjectural' or 'hypothetical.'" <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. at 103 (internal citations and quotations omitted). Here, Total requests indemnification "*if* TPPRC is made a party to any lawsuit or any legal action." Such an ethereal contingency is the type of conjectural or hypothetical harm that falls short of an injury in fact under <u>Steel Co.</u>, and Total's sixth claim therefore lacks standing and must be dismissed for lack of jurisdiction.

The eighth claim seeks the return of gasoline station equipment to Total, (Docket No. 172, at 35, ¶ 116) and the ninth claim seeks repayment of a loan made out to counter defendants, Santos, José and Sixto Pabón. (<u>Id.</u> at 36.) Much like Total's first three claims, these claims are directed at parties other than the 08-1986 counter defendants, and they allege actions that the 08-1986 counter defendants have undisputedly not taken. The Pabón brothers are not among the 08-1986 counter defendants, and it was established above that the 08-1986 counter defendants have not used the gasoline stations in the absence of franchise agreements with Total. Accordingly, Total again asserts no connection between its alleged injury and any action by the 08-1986 counter defendants, and therefore lacks standing. The 08-1986 counter defendants are entitled to judgment as a matter of law as to claims 8 and 9.

CIVIL 08-1950 (CCC)                        27
CIVIL 08-1986 (CCC)
CIVIL 08-2025 (CCC)
CIVIL 08-2032 (CCC)
CIVIL 08-2044 (CCC)

IV.    CONCLUSION

Total was permitted to intervene in this case only to establish the nondiscriminatory nature of its franchise offers to Esso's franchisees.  Its attempt to bring a counterclaim involving different questions of law, different parties, different facts, and different evidentiary considerations falls outside the permissible scope of its intervention.  Total's and Esso's requests for declaratory judgment have already been addressed and are therefore dismissed.  As to those claims that Total has a right to advance as a named defendant, Total lacks jurisdiction.  There being no remaining genuine issue of material fact, counter defendants in cases 08-1950, 08-1986, and 08-2025 are entitled to judgment as a matter of law.

In view of the above, the counter defendants' motion is GRANTED and Total's and Esso's counterclaims are DISMISSED.

SO ORDERED.

At San Juan, Puerto Rico, this 25th day of February, 2009.

                                    S/ JUSTO ARENAS
                          Chief United States Magistrate Judge