IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS ALFREDO SANTIAGO-SEPÚLVEDA, et al.,

Plaintiffs

v.

ESSO STANDARD OIL COMPANY (PUERTO RICO), INC., et al.,

Defendants

CIVIL 08-1950 (CCC)(JA)
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

OPINION AND ORDER

This matter is before the court on plaintiffs' motion for preliminary injunction and/or an order to show cause as to why relief should not be granted. (Docket No. 259.)  Plaintiffs in civil cases 08-1950 and 08-2025, filed the motion on May 22, 2009.  On May 27, 2009, defendant Total Petroleum Puerto Rico Corporation responded and filed a "Request for Withdrawal of Injunction Petition in Order to Avoid Request for Imposition of Sanctions Under Rule 11 of the Federal Rules of Civil Procedure." (Docket No. 261.)  Plaintiffs subsequently filed two supplemental briefs in support of their position. (Docket Nos. 263, 264.)  Esso then filed a brief in opposition (Docket No. 270), and Total moved to hold plaintiffs' injunction petition in abeyance while plaintiffs' outstanding petition to supplement their pleadings (Docket No. 255) is resolved. (Docket No. 272.)  For

CIVIL 08-1950 (CCC)(JA)                           2
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

the reasons set forth below, plaintiffs' motion for preliminary injunction or for an order to show cause is DENIED.

I.   PROCEDURAL AND FACTUAL BACKGROUND

In March 2008, Esso Standard Oil Company ("Esso") announced its intention to terminate its Puerto Rico gasoline retail franchises on September 30, 2008. The company later changed the termination date to October 31, 2008. (Docket No. 41.) On August 26, 2008, a large group of Esso franchisees filed a complaint under the Petroleum Marketing Practice Act ("PMPA") (15 U.S.C. § 2801, *et seq*.) against Esso to enjoin it from terminating the franchises. (Docket No. 2.) Four other complaints were subsequently filed in four separate cases, all of which were consolidated into this one. (Docket No. 46.) On September 4, the retailer plaintiffs in the consolidated case (Civil 08-1950) moved for a preliminary injunction to prevent Esso from terminating their franchises. (Docket No. 7.) Total moved to intervene in the consolidated case on September 9, 2008, as the motion for preliminary injunction posed a threat to its plans to purchase the gasoline retail stations whose franchises Esso sought to terminate. (Docket No. 10.) On September 17, 2008, this case was referred to me, (Docket No. 29), and on October 9, 2008, I granted Total's motion to intervene. (Docket No. 91.)

CIVIL 08-1950 (CCC)(JA)                         3
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

I issued an opinion and order denying plaintiffs' motion for preliminary injunction on October 18, 2008.[1] (Docket No. 118.) On October 29, 2008, plaintiffs in civil case 08-1986 announced that they had agreed to accept the franchise agreements offered by Total. (Docket No. 146.) Between that date and October 31, 2008, all but two of those plaintiffs signed agreements with Total. (Docket No. 157, at 5, ¶ 2.)

In the time since that date, Total has been delivering gasoline to plaintiffs for resale, but plaintiffs now complain that Total has breached a "statutory obligation to sell gasoline under the trademark of the refinery that supplies the gasoline that is sold at its service stations." (Docket No. 259-2, at 5.) They advance a brief argument that Total has "constructively terminated" their franchises. (Id. at 6.) According to plaintiffs, Total has sold gasoline to retailers in the Puerto Rico market that is not under a refiner's trademark since 2004. (Id. at 7.) Plaintiffs seek an order requiring Total "to authorize all of its retailers to sell motor fuel under 'a trademark which is owned or controlled by . . . a refiner which

---

[1] In its response to the motion *sub judice*, counsel for Total twice claims that my opinion and order "dismiss[ed] the Plaintiffs' Complaint." (Docket No. 261, at 3, 4.) In fact, Total's counsel predicates an entire motion –one not directly at issue here– on the premise that the opinion and order dismissed the complaints of plaintiffs in cases 08-1950, 08-1986, and 08-2025. (Docket No. 247.) The opinion and order did no such thing.

CIVIL 08-1950 (CCC)(JA)                        4
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

supplies motor fuel to' Total[.]"  (Docket No. 259-2, at 10.)  Total admits that it has been purchasing its gasoline from the Hovensa Refinery in St. Croix of the U.S. Virgin Islands, but contends that this is the exact same source from which Esso purchased the gasoline that it delivered to plaintiffs for years.  Total therefore questions plaintiffs' right to bring such an argument now, as plaintiffs have advanced never lodged this complaint in the past.  (Docket No. 261, at 10.) Total also argues that it is not required under the PMPA to provide the type of gasoline that plaintiffs are demanding.

II.    INJUNCTION STANDARD

The First Circuit employs a quadripartite test for deciding a typical motion for preliminary injunction.  It weighs

> 1.   The likelihood of success on the merits; 2.   The potential for irreparable injury; 3.   A balancing of the relevant equities (most importantly, the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld); and (4) The effect on the public interest of a grant or denial of the restrainer.

Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991).  "The *sine qua non* of that formulation is whether the plaintiffs are likely to succeed on the merits."   Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993) (citing Narragansett Indian Tribe v. Guilbert, 934 F.2d at 6).

CIVIL 08-1950 (CCC)(JA)
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

5

Under the PMPA, however, a separate standard may apply if the proper criteria are met. Those criteria are discussed below. *Infra*, part III. If they are met, then the court applies the following standard:

> the court shall grant a preliminary injunction if–
>
> (A) the franchisee shows--
>
>     (i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and
>
>     (ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and
>
> (B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

15 U.S.C. § 2805(b)(2). This standard marks a departure from the traditional common law standard for injunctive relief as well as a departure from Rule 65 requirements. Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.), 582 F. Supp. 2d 154, 184 (D.P.R. 2008), vacated in part by 2009 WL 87586 (D.P.R. Jan. 12, 2009), (citing Avramidis v. Arco Petroleum Prod. Co., 798 F.2d 12, 14 (1st Cir.

CIVIL 08-1950 (CCC)(JA)
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

6

1986)). The Act PMPA "focuses upon the prevention of abuses from a powerful franchisor and a not so powerful franchisee." Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.), 582 F. Supp. 2d at 184 (citing C.K. Smith & Co. v. Motiva Enter. LLC, 269 F.3d 70, 73 (1st Cir. 2001)). Reflecting that concern, Congress eased the standard for injunctive relief, and made it more liberal than the stringent common law requirement of making a strong showing of probably prevailing on the merits. See Moody v. Amoco Oil Co., 734 F.2d 1200, 1216-17 (7th Cir. 1984); Corbin v. Texaco, Inc., 690 F.2d 104, 105-06 (6th Cir. 1982).

III.  DISCUSSION

  A. Trademarked Fuel Under Section 2801

The court has jurisdiction over this case and this motion pursuant to 28 U.S.C. § 1331, as it arises under the PMPA.[2] Section 2805(b) of the PMPA

---

[2] Esso and Total argue that plaintiffs' motion should not be addressed until the court rules on plaintiffs' motion to file supplemental pleadings. (Docket Nos. 270, 272.) Total does not cite a single source of law in support of its argument, however, and Esso cites only a case from the District of Columbia, LeBoeuf, Lamb, Greene & MacRae, LLP v. Abraham, 180 F. Supp. 2d 65 (D.D.C. 2001) (Id.) Not only does LeBoeuf, Lamb, Greene & MacRae, LLP lack precedential value, it is also distinguished from this case in that the plaintiff's complaint in that case "involve[d] facts, legal issues, and parties different from those presented in the pending motion." Leboeuf, Lamb, Greene & Macrae, LLP, 180 F. Supp. 2d at 70. Here, plaintiffs' complaint and motion involve the same parties, the same controlling statute, and related facts. Accordingly, this court has jurisdiction over the motion at bar. See Leboeuf, Lamb, Greene & Macrae, LLP, 180 F. Supp. 2d

CIVIL 08-1950 (CCC)(JA)      7
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

provides that the court may award a preliminary injunction as a form of equitable relief.  15 U.S.C. § 2805(b)(2).  It also provides that:

> [T]he court shall grant such equitable relief as the court determines is necessary to remedy the effects of any failure to comply with the requirements of section 2802, 2803, or 2807 of this title, including declaratory judgment, mandatory or prohibitive injunctive relief, and interim equitable relief.

15 U.S.C. § 2805(b)(1).  Section 2805(b) does not provide for equitable relief for the violation of any other section of the PMPA.  In other words, under a plain reading of the statute, the only sections of the PMPA upon which a plaintiff may base a motion for preliminary injunction are sections 2802, 2803, and 2807.

   Here, plaintiffs urge a finding that "motor fuel must be sold under a trademark owned by the refiner" under section 2801. (Docket No. 259-2, at 6.) Because preliminary injunctions are only available in the wake of violations of sections 2802, 2803, and 2807, however, plaintiffs cannot obtain injunctive relief under the PMPA standard.

---

at 69 ("When the motion is based on facts closely related to the facts in the complaint . . . the court may have jurisdiction to review a motion for preliminary relief pursuant to the All Writs Act, 28 U.S.C. § 1651(a).)  ("[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.")).

CIVIL 08-1950 (CCC)(JA)                         8
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

The same is true under the more stringent standard of a common law preliminary injunction. Plaintiffs have little or no chance of success on the merits, as section 2801 is by its own terms not remedial in nature. Rather, section 2801 serves as the "Definitions" section of the PMPA. It provides in pertinent part that

> The term "franchise" means any contract--
>
> . . .
>
> under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use.

15 U.S.C. § 2801(1)(A).

> The term "franchise" includes--
>
> . . .
>
> (ii) any contract pertaining to the supply of motor fuel which is to be sold, consigned or distributed--
>
>    (I) under a trademark owned or controlled by a refiner. . . .

15 U.S.C. § 2801(B)(ii)(I).

Nothing in this section grants a right of recovery for the distribution of non-branded gasoline. Nonetheless, plaintiffs urge an application of the holding of the

CIVIL 08-1950 (CCC)(JA)　　　　　　　　　9
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

Massachusetts District Court in Riverdale Enter., Inc. v. Shell Oil Co., 41 F. Supp. 2d 56 (D. Mass. 1999). Aside from its lack of precedential power over this court, Riverdale is inapposite and unconvincing. While it did address a retailer's complaint regarding a franchisor's distribution of unbranded gasoline, the franchisor in that case was a distributor known as "O'Connell Oil Associates, Inc.," which "[did] not own or control a refiner's trademark." Id. at 67. Total, on the other hand, is a known brand with a refiner's trademark. (Docket No. 262-2.) It "is the fourth largest non-state owned oil group in the world," with operations in over 130 countries and about 16,000 retail stations around the world. (Docket No. 259-4, ¶ 1.) "It is engaged in all aspects of the oil industry. . . ." (Id.) Its Puerto Rico entity, Total Petroleum Puerto Rico Corporation, has authority to use the existing trademarks of its parent company, Total S.A. (Docket No. 262-2, at 28:25, 29:1-2, 30:1-4.) Thus, while the franchisees in Riverdale suffered without the use of a known trademark, the plaintiffs in this case receive the benefit of the Total's globally recognized mark.

　　　Riverdale is also not supportive of injunctive relief, which plaintiffs here seek. The court in Riverdale merely severed from a franchise contract a term

CIVIL 08-1950 (CCC)(JA)                    10
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

permitting unbranded fuel under section 2805(f)[3]; it did not grant an injunction against the franchisor's provision of unbranded gasoline under section 2805(b)(2). Riverdale Enter., Inc. v. Shell Oil Co., 41 F. Supp. 2d at 68. Such an injunction would have been inappropriate, as section 2801 cannot serve as a basis for a preliminary injunction under the statute or the common law.

Not only is Riverdale inapposite; it is also unconvincing. Riverdale held that:

> Incorporated into the very definition of a PMPA franchise, as applicable here, is the "distribution of motor fuel under a trademark which is owned or controlled . . . by a refiner which supplies motor fuel to the distributor which authorized or permits . . . occupancy" of leased marketing premises. 15 U.S.C. § 2801. Thus, the availability of trademarked gasoline is at the heart of a PMPA franchise.

Riverdale Enter., Inc. v. Shell Oil Co. 41 F. Supp. 2d at 66-67. It is true that the PMPA's definition of "franchise" includes the distribution of fuel under a trademark. Here, the parties's relationship fit this definition because Total provides fuel under the Total trademark.[4] But even if it did not, plaintiffs would not be entitled to an

---

[3] "No franchisor shall require . . . a franchisee to release or waive–– any right that the franchisee has under this subchapter or other Federal law. . . . 15 U.S.C. § 2805(f)(1)(A).

[4] The definition covers contracts involving both franchisors that are "distributors" and those that are "refiners." Under a distributor contract, the distributor grants the retailer the use of a trademark held by a third party refiner

CIVIL 08-1950 (CCC)(JA) 11
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

injunction.  Rather, the PMPA would simply be inapplicable and would not be a source of federal jurisdiction.  See Tolga Oil Corp. v. Nur-Han, Inc., 668 F. Supp. 761 (E.D.N.Y.[5] 1987) (denying jurisdiction under the PMPA where the franchisor was not a refiner and did not distribute trademarked products); Merlino v. Getty Petroleum Corp., 916 F.2d 52 (2d Cir. 1990) (same).  The court in

---

which supplies motor fuel to the distributor.  15 U.S.C. § 2801(1)(A).  Under a refiner contract, the refiner authorizes the retailer to use its own trademark.  Id. A franchise includes a contract for use of a trademark owned (1) "by such refiner *or*" (2) "by a refiner which supplies motor fuel to the distributor."  15 U.S.C. § 2801(1)(B)(i) (emphasis added).  Thus, *either* of these scenarios fits the definition of a franchise.

Plaintiffs argue that Total is a distributor, and that Total is therefore obligated to provide plaintiffs with gasoline under the trademark of a third party refiner that supplies its gasoline.  (Docket No. 259-2, at 6, 8.)  Total indeed fits the definition of a distributor because it "purchases motor fuel for . . . distribution to another."  15 U.S.C. § 2801(6)(A).

It also, however, is a "refiner."  15 U.S.C. § 2801(5).  "The term 'refiner' means any person engaged in the refining of crude oil to produce motor fuel, and includes any affiliate of such person."  15 U.S.C. § 2801(5).  While Total Petroleum Puerto Rico Corporation may not itself refine crude oil, its parent company, which is "engaged in all aspects of the oil industry" certainly does. (Docket No. 259-4, ¶ 1; Docket No. 263, at 3.)  Defendant Total is thus at least "affiliated with" a person engaged in refining oil, and therefore qualifies as a refiner.  As a refiner, Total need only supply its own mark to fit under the PMPA, and it need not provide fuel under a trademark owned by some other third party refiner to satisfy the definition of a "franchise" under the PMPA.

[5] Tolga was not, as plaintiffs' counsel would have the court believe, before the Southern District of New York.  (Docket No. 259-2, at 6.)

CIVIL 08-1950 (CCC)(JA)                    12
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

Riverdale alluded to this by concluding that a contract term permitting a distributor to distribute non-branded fuel "would circumvent, if not threaten, the PMPA status of that agreement." Riverdale Enter., Inc. v. Shell Oil Co., 41 F. Supp. 2d at 67. This is exactly correct. The distribution of gasoline without a trademark by a distributor may render the PMPA inapplicable, and nothing more. Here, the parties still have a "franchise" under the PMPA, and even if they did not, the inapplicability of the PMPA would not somehow operate to provide a remedy for plaintiffs.[6]

B.   Constructive Termination

Plaintiffs also make a brief and undeveloped allusion to a "constructive termination" by Total. (Docket No. 259-2, at 6-7.) Plaintiffs bear the burden of establishing this. "[U]nder the PMPA, the plaintiffs must prove as a threshold matter a termination or nonrenewal of their franchise relationship within the meaning of the PMPA. 15 U.S.C. § 2805(c)." Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc., 940 F.2d 744, 748 (1st Cir. 1991) (quoting Ackley v. Gulf Oil Corp., 726 F. Supp. 353, 359 (D. Conn. 1989)). The only two cases

---

[6] Indeed, as plaintiffs well know, the PMPA exists to *help* franchisee retailers. C.K. Smith & Co. v. Motiva Enter. LLC, 269 F.3d at 73. The notion that plaintiffs would seek to disavow its applicability is confounding.

CIVIL 08-1950 (CCC)(JA)                       13
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

recognizing a constructive termination in the First Circuit are Marcoux v. Shell Oil Prods. Co., 524 F.3d 33 (1st Cir. 2008), cert. granted by Mac's Shell Serv., Inc. v. Shell Oil Prods. Co., 2009 WL 1650201 (U.S. Jun. 15, 2009) and cert. granted by Shell Oil Prods. Co. v. Mac's Shell Serv., Inc., 2009WL 1650202 (U.S. Jun. 15, 2009); and Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc., 940 F.2d 744 (1st Cir. 1991).  They both involve the assignment of a franchise by one franchisor to another.  The First Circuit has

> adopted the test for constructive termination articulated by the Sixth Circuit.
>
> To sustain a claim, under the PMPA, that a franchisor *assigned* and thereby constructively terminated a franchise agreement, the franchisee must prove either: (1) that by making the *assignment*, the franchisor breached one of the three statutory components of the franchise agreement, (the contract to use the refiner's trademark, the contract for the supply of motor fuel, or the lease of the premises), and thus, violated the PMPA; or (2) that the franchisor made the *assignment* in violation of state law and thus, the PMPA was invoked.

Marcoux v. Shell Oil Prods. Co., 524 F.3d at 45 (quoting Chestnut Hill Gulf, Inc., v. Cumberland Farms, Inc., 940 F.2d at 750-51 (quoting May-Som Gulf, Inc. v. Chevron U.S.A., Inc., 869 F.2d 917, 922 (6th Cir. 1989)) (emphasis added).

CIVIL 08-1950 (CCC)(JA) 14
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

Here, unlike in Marcoux or Chestnut Hill Gulf, there has been no assignment of a franchise. Esso did not assign its franchises to Total,[7] and Total has not assigned its franchises to any third party. Rather, Total has continued to act as franchisor to plaintiffs. It is true that both Marcoux and Chestnut Hill Gulf identify "the contract to use the refiner's trademark" as one of the three "statutory components" of the franchise agreement. Marcoux v. Shell Oil Prods. Co., 524 F.3d at 45; Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc., 940 F.2d at 751. Those statutory components are only identified, however, within the context of "determin[ing] whether the *assignment* of a franchise results in its constructive termination." Id. (emphasis added). Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc., 940 F.2d at 750. Plaintiffs have not cited, and this court cannot find, First Circuit authority recognizing a constructive termination in any other context, i.e., one not involving the assignment of a franchise.[8] This court is not prepared to set First Circuit precedent, and plaintiffs' claim for relief for constructive termination fails.

---

[7] Esso terminated its franchises, an action that has been the subject of other opinions of this court but is not at issue here.

[8] Even if the "statutory component" in question somehow operated to require that Total offer plaintiffs the use of a refiner's trademark, Total has satisfied that requirement. *See supra* note 3.

CIVIL 08-1950 (CCC)(JA)                                   15
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

As a final matter, I acknowledge Total's threat of a petition for sanctions under Rule 11 of the Federal Rules of Civil Procedure against plaintiffs. I treat it as just that: a threat. Total makes no actual request that the court impose such sanctions. Until such time as threat becomes action, I need make no ruling on the matter.

VI.   CONCLUSION

Plaintiffs have not established that Total is required to supply gasoline under the trademark of the refinery that produces the gasoline. It is sufficient that Total supply its own trademark, which it does. Accordingly, plaintiffs' motion for preliminary injunction and/or order to show cause (Docket No. 259) is DENIED. Total's motion to hold plaintiffs' motion in abeyance (Docket No. 272) is also DENIED.

SO ORDERED.

At San Juan, Puerto Rico, this 18th day of June, 2009.

                                          S/ JUSTO ARENAS
                                Chief United States Magistrate Judge