IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS ALFREDO SANTIAGO-
SEPÚLVEDA, et al.,

Plaintiffs

v.

ESSO STANDARD OIL COMPANY
(PUERTO RICO), INC., et al.,

Defendants

CIVIL 08-1950 (CCC)(JA)
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

OPINION AND ORDER

This matter is before the court on motions by defendants Total Petroleum

Puerto Rico Corporation ("Total") and Esso Standard Oil (Puerto Rico), Inc.

("Esso").  On April 29, 2009, Total filed a motion to preclude further participation

of plaintiffs in cases 08-1950, 08-1986, and 08-2025.  (Docket No. 247.)  On

May 8, 2009, Esso moved for an entry of final judgment in its favor as to all

claims in cases 08-1950, 08-1986, 08-2025, 08-2032, and 08-2044.  (Docket No.

248.)  Plaintiffs from cases 08-1950, 08-1986, and 08-2025 ("Group I plaintiffs")

filed their opposition to the motions filed by Esso and Total on May 11, 2009.

(Docket No. 249.)   On May 18, 2009, those plaintiffs filed an informative

memorandum in further support of their opposition.  (Docket No. 252.)  Plaintiffs

from case 08-2044 and 08-2032 ("Group II plaintiffs") filed oppositions to the

entry of final judgment on May 21, 2009 and May 23, 2009, respectively.  (Docket

CIVIL 08-1950 (CCC)(JA)                    2
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

Nos. 256, 260.)  On June 3, 2009, Total filed a reply[1] to plaintiffs' opposition to the entry of final judgment, and moved to strike plaintiffs' informative motion in further support of their existing opposition motion.  (Docket Nos. 267, 268.)  For the reasons set forth below, Total's motion is GRANTED and Esso's motion is GRANTED in part and DENIED in part.

I.      PROCEDURAL AND FACTUAL BACKGROUND

        The facts of this case have been recounted multiple times.  See Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.), 582 F. Supp. 2d 154, 156-174 (D.P.R. 2008); (Docket Nos. 118, 145, 149, 228.)  In March 2008, Esso announced that it would terminate its Puerto Rico gasoline retail franchises, effective September 30, 2008.  Id. at 156.  The company later changed the effective termination date to October 31, 2008.  (Docket No. 41.)  On August 26, 2008, a large group of Esso franchisees filed a complaint under the Petroleum Marketing Practices Act ("PMPA") (15 U.S.C. § 2801, et seq.) to enjoin Esso from terminating the franchises.  (Docket No. 2.)  Four other complaints were

---

        [1] Caveat.  Rule 7.1(e) of the Local Rules for the District Court of Puerto Rico provides that "[a]ll memoranda shall be . . . in a font size . . . no less than twelve (12) points."  Local Rules of the U.S. District Court for the District of P.R., Rule 7.1(e) (2004).  Counsel for Total violated this rule by submitting a reply in a nine (9) point font.  Local Rule 7.1(e) is "unambiguously clear."  Ortiz v. Hyatt Regency Cerromar Beach Hotel, Inc., 422 F. Supp. 2d 336, 339 (D.P.R. 2006).

CIVIL 08-1950 (CCC)(JA)                    3
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

subsequently filed in four separate cases, all of which were consolidated into this one.  (Docket No. 46.)  On September 4, the retailer plaintiffs in the consolidated case (Civil No. 08-1950) moved for a preliminary injunction to prevent Esso from terminating their franchises.  (Docket No. 7.)  Total moved to intervene in the consolidated cases on September 9, 2008, as the motion for preliminary injunction posed a threat to Total's plans to purchase the gasoline retail stations whose franchises Esso sought to terminate.  (Docket No. 10.)  On September 17, 2008, this case was referred to me, and on October 9, 2008, I granted Total's motion to intervene.  (Docket Nos.  30, 91.)

On October 7, 2008, I issued an order acknowledging an agreement between the Group II plaintiffs and the defendants, and retaining supervision and jurisdiction over the parties until final resolution of the matter.  (Docket No. 81.)  On October 18, 2008, I issued an opinion and order denying plaintiffs' motion for preliminary injunction.  (Docket No. 118.)  On October 29, 2008, plaintiffs in case 08-1986 announced that they had agreed to accept the franchise agreements offered by Total.  (Docket No. 146.)  Between that date and October 31, 2008, all but two plaintiffs signed agreements with Total.  (Docket No. 157, at 5, ¶ 2.)

CIVIL 08-1950 (CCC)(JA)                    4
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

In the time since that date, the parties appear to have been adhering to their mutual obligations under the contract.  Esso and Total now contend that this court has already deemed them compliant with the PMPA.  Thus, Esso argues for entry of final judgment and Total moves for "an order precluding [Group I plaintiffs] to [sic] appear in any further proceedings . . . . " (Docket No. 247, at 7.)  Plaintiffs, however, argue that the court has decided only that a permanent injunction will not issue against Total and Esso.  (Docket No. 249, at 2.)  They contend that they are still entitled to a ruling on the legality of the franchise contracts, which Total offered to them on a "take it or leave it" basis.  (Docket No. 155, at 3.)  In plaintiffs' view, final judgment may not be entered before such a ruling.

The franchise agreement offered to plaintiffs by Total consists of three separate contracts:  a Lease Contract, a Franchise Contract for Total's convenience store enterprise known as "Bonjour," and a Sale and Supply Contract.  (Docket Nos. 155, at 3, 155-4.)  Plaintiffs have argued that the following provisions of those contracts are illegal and should not be imposed upon them:

Paragraph 2 of Article 4.1 of the Lease Contract:

CIVIL 08-1950 (CCC)(JA)                              5
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

> The Retailer [plaintiffs] expressly acknowledges that the Company shall be entitled to lease to third parties parts or portions of the lands or structures where the Station is located, and that the Retailer shall have no right to discounts or credits of any kind as a consequence of the above.

(Docket No. 108-3, at 3.)

Article 4.4 of the Lease Contract:

> [T]he parties agree that the Minimum Rent may be increased to account for any additional investment the Company [Total] may make . . . at any time while this Contract is in effect . . . at its sole and absolute discretion.

(Docket No. 108-3, at 4.)

Article 11.2 of the "Bonjour" Franchise Contract:

> The Retailer agrees to purchase for sale at the store only those Products and Services of the type, brand and quality recommended and/or approved by the Company . . . . The Retailer agrees to purchase only from those suppliers and providers authorized by the Company . . . . The retailer must refrain from selling any product or service that is not authorized by the Company . . . .

(Docket No. 155-4, at 15.)

Article 9.3 of the "Bonjour" Franchise Contract - Non-Competition Agreement:

CIVIL 08-1950 (CCC)(JA)                         6
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

> The Retailer agrees, for the duration of the Contract, and for an additional period of twelve (12) months after its termination or expiration, not to engage in or acquire any interest, directly or indirectly, in a convenience store type of business within the territorial jurisdiction of the municipality where the BONJOUR Franchise object of this agreement is located, or any adjoining municipality. The Retailer will be deemed to be engaged in such business indirectly if he is an employee, officer, director, trustee, agent or partner of a person, firm, corporation, association, partnership, trust, or any other legal entity that is engaged in such a business within the aforementioned area. The above shall not be understood as a prohibition from having any interest in a corporation or entity for investment purposes without intending to acquire control or majority interest in securities traded in a recognized stock market.

(Docket No. 155-4, at 11.)

Article 8.1 of the Sale and Supply Contract - Discontinuation, Substitution of Products:

> The Company shall have the absolute right to discontinue or subtitute [sic] any engine fuel, petroleum product or any of the Total Products object of this Contract for industrial reasons, inventory reasons, world-wide supply of materials, or for marketing or competition decisions, and the retailer agrees to acquire the substitute products as long as the Company sells them within the Territory instead of the substituted product.

(Docket No. 155-5, at 8.)

CIVIL 08-1950 (CCC)(JA)                    7
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)


Each of the three contracts also contains language relating to the interpretation of the contracts themselves:

> This Contract shall be interpreted consistent with and governed by the laws of the Commonwealth of Puerto Rico.

(Lease Agreement, Article 19.1, Docket No. 108-3, at 21; Franchise Contract, Article 17.1, Docket No. 155-4, at 24; Sale and Supply Contract, Article 23.1, Docket No. 155-5, at 23.)  All three contracts also provide for the severability of contract terms under certain circumstances:

> The intention of the parties appearing herein is for all provisions on this Contract to be complied with in their entirety as allowed by law.  Therefore, should a court with jurisdiction find that the scope of some of the provisions is too broad to be complied with as written, the intention of the parties is that the court must modify such provision until its scope is one that the court finds may be enforceable.  However, should any provision in this Contract be found to be unlawful, invalid, or unenforceable under present or future laws, said provisions shall be nullified; this Contract shall be interpreted and governed as if said unlawful, invalid or unenforceable provision had never been a part thereof, and the rest of the provisions in this Contract shall remain in force and will not be affected by the unlawful, invalid or unenforceable provision or its elimination.

CIVIL 08-1950 (CCC)(JA)                    8
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

(Lease Agreement, Article 20.10, Docket No. 108-3, at 23; Franchise Contract, Article 18.3, Docket No. 155-4, at 25; Sale and Supply Contract, Article 24.3, Docket No. 155-5, at 24.)

II.     DISCUSSION

       A.     Prior Rulings

       The first issue is the extent to which I may order relief to plaintiffs in light of prior rulings in this case.  Total suggests that final judgment has already been issued in this case.  (Docket No. 268, at 4, ¶ 15.)  It has not.  Nowhere in any opinion or order issued by the court in this case has there appeared an order for entry of judgment.  Nor has any judgment been entered into the civil docket under Rule 79(a).  Fed. R. Civ. P. 58(c)(1)-(2) (judgment is only entered when "the judgment is entered in the civil docket under Rule 79(a).").  Indeed, if judgment had already issued, Esso would not be moving for entry of final judgment. (Docket No. 248.)  See Total Petroleum P.R. Corp. v. Torres-Caraballo, ___ F. Supp. 2d ___ , 2009 WL 1703000 (D.P.R. Jun. 18, 2009).

       Both parties suggest that judgment is appropriate because the decisions already made by the court leave nothing left to rule upon.  It is true that I held in the opinion and order issued on October 18, 2008 that "Esso has complied with

CIVIL 08-1950 (CCC)(JA)                     9
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

the notice requirements under the PMPA, and Total's offering of nondiscriminatory franchise contracts generally complies with Esso's obligation to assure that its franchisee is offered a non-discriminatory contract . . . . " Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.), 582 F. Supp. 2d at 185.  I have acknowledged that "Esso and Total . . . had complied with the requirements of the Petroleum Marketing Practices Act . . . ."  (Docket No. 197, at 2; see also Docket No. 228, at 20-21.)  Those holdings remain effective.  Plaintiffs are correct, however, that my denial of plaintiffs' motion to enjoin the termination of their franchises was not the same as a declaration that all terms of the franchise agreements are valid. See Riverdale Enter., Inc. v. Shell Oil Co., 41 F. Supp. 2d. 56, 68 (D. Mass. 1999) (finding franchisor justified in terminating franchise under the PMPA despite a finding that at least one term of replacement franchise offer was impermissible); Coast Vill. Inc. v. Equilon Enter., LLC, 163 F. Supp. 2d 1136, 1180-1181 (C.D. Cal. 2001) (same).  Indeed, the only controlling issue in the October opinion was "whether a permanent injunction will issue."  Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.), 582 F. Supp. 2d at 185.  While I did tangentially discuss some specific contractual provisions, I concluded only that "[t]he proposed Total terms are not subject to court-ordered modification *at this time*."

CIVIL 08-1950 (CCC)(JA)                    10
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)


Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.), 582 F. Supp. 2d at 182

(emphasis added).   Accordingly, the issue of whether the terms of Total's

franchise offers are acceptable has been reserved to this point.

       Even if I had made a finding on the legality of certain contract terms, this

would not constrain my power to modify such a finding.  Federal Rule of Civil

Procedure 54(b) provides that "any order or other decision, however designated,

that adjudicates fewer than all the claims or the rights and liabilities of fewer than

all the parties . . . may be revised at any time before the entry of a judgment

adjudicating all the claims . . . ." Fed. R. Civ. P. 54(b).  Moreover, "the law of the

case doctrine does not prevent a judge from changing his mind, so long as there

was an explanation and the court took into account justified reliance."  City of

Bangor v. Citizens Commc'n Co., 532 F.3d 70, 100 (1st Cir. 2008) (citing Fiori v.

Truck Drivers, Local 170, 354 F.3d 84, 90 (1st Cir. 2004)).  Here, neither party

has indicated that it has placed any detrimental reliance on the contractual

provisions at issue.  I am therefore not prevented from addressing the legality of

the contractual provisions about which plaintiffs complain.

       B.     Section 2805(f) of the PMPA

CIVIL 08-1950 (CCC)(JA)                    11
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)


The next issue is whether the PMPA provides a basis for relief if any of

Total's terms are found illegal.  Section 2805(f) of the PMPA provides:

> No franchisor shall require, as a condition of entering into or renewing
> the franchise relationship, a franchisee to release or waive . . . any
> right that the franchisee may have under any valid and applicable
> State law.

15 U.S.C. § 2805(f)(1)(B).  There is some question as to whether section 2805(f)

provides an independent remedy under the PMPA, especially where, as here, the

franchisee has already accepted the franchisor's offer.  The First Circuit has yet

to interpret section 2805(f) explicitly, but it has found that the Act "requires that

franchisees faced with objectionable contract terms refrain from ratifying those

terms by executing the contracts (even 'under protest') and operating under

them" if they wish to be protected under the PMPA.  Marcoux v. Shell Oil Prods.

Co. LLC, 524 F.3d 33, 49 (1st Cir. 2008), cert. granted by Mac's Shell Serv. v.

Shell Oil Prod. Co. LLC, 2009 WL 1650201 (U.S. Jun. 15, 2009) and cert. granted

by Shell Oil Prod. Co. LLC v. Mac's Shell Serv., Inc., 2009 WL 1650202 (U.S. Jun.

15, 2009).  That holding parallels a Seventh Circuit ruling explicitly interpreting

section 2805(f):  if a "statutory 'franchise' has been renewed, [the] franchisee

must seek redress at the state level to enforce its contract rights under the

franchise agreement–i.e., violations of § 2805(f)(1) that do not constitute a non-

CIVIL 08-1950 (CCC)(JA)                 12
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

renewal under the PMPA but are instead ordinary contract disputes." Dersch Energies, Inc. v. Shell Oil Co. & Equilon Enter., Inc., 314 F.3d 846, 865-66 (7th Cir. 2002).

In this case, all but two plaintiffs ratified the terms of Total's offer over seven months ago.   There is therefore reason to question plaintiffs' right to contest contractual terms at this stage in the litigation.   This case, however, differs materially form Marcoux and Dersch.  Whereas "[t]he stumbling block" for plaintiffs in Marcoux and Dersch was that they did not "insist on receiving notices of [franchise] nonrenewal," Marcoux v. Shell Oil Prod. Co. LLC, 524 F.3d at 49, before signing new agreements, plaintiffs in this case received notices of franchise termination in March, 2008 and filed suit before the effective termination date. Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.), 582 F. Supp. 2d at 156. Whereas there was neither actual franchise termination nor constructive nonrenewal in Marcoux and Dersch, there was actual franchise termination here. Where there was no jurisdiction under section 2802 of the PMPA in those cases, there is in this case.   Accordingly, Marcoux and Dersch do not operate to preclude recovery for plaintiffs under section 2805(f).  Given that this court has jurisdiction under the PMPA, there is no reason not to apply a plain reading of section 2805(f).

CIVIL 08-1950 (CCC)(JA)                    13
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

Thus, plaintiffs may have a remedy under section 2805(f) if they can demonstrate the illegality of any of Total's contractual terms.

> C.    Legality of Terms

>> 1.    Leases to Third Parties

Article 4.1 of the Lease Agreement permits Total to lease portions of the leased premises to third parties, and provides that plaintiffs "shall have no right to discount or credits of any kind as a consequence. . . . " (Docket No. 108-3, at 3.) "Under Puerto Rico law, three elements characterize a lease contract: (1) the thing; (2) temporal duration; and (3) a price." Pico Vidal v. Ruiz Alvarado, 377 B.R. 788, 794 (Bankr. D.P.R. 2007) (citing In re Daben Corp., 469 F. Supp. 135, 148 (D.P.R. 1979)). "Unlike the common law, the civil law allows that a leased thing not be entirely defined." In re Daben, 469 F. Supp. 135 at 148. "The enjoyment and use of the [leased] premises," however, is "the essence of the lease agreement." Nolla v. Joa Co. of Fla., 102 D.P.R. 428, 2 P.R. Offic. Trans. 538, 541 (1974) (finding lessee was entitled to compensation from a third party that had taken possession of validly leased premises during the lease period).

Article 4.1 borders on the unconscionable. Under the Article's terms, Total would have the right to lease 99% of a given gasoline retail station to a third

1   CIVIL 08-1950 (CCC)(JA)                    14
2   CIVIL 08-1986 (CCC)(JA)
3   CIVIL 08-2025 (CCC)(JA)
    CIVIL 08-2032 (CCC)(JA)
4   CIVIL 08-2044 (CCC)(JA)

5

6   party while still charging the franchisee 100% of the rent expense.  While Puerto

7   Rico law does not require that the "leased thing" be entirely defined, it must still

8   be at least identifiable.  Article 4.1 simply leaves too much room for arbitrary or
9
    discriminatory actions by Total.  See Avramidis v. Atl. Richfield Co., 623 F. Supp.
10
11  64, 67 (D. Mass. 1985) ("[W]ithout stated standards, [the franchisor] could apply

12  the [pricing scheme] in an arbitrary, or even discriminatory[ ] manner . . . . ").

13      Moreover, Article 4.1 defies the spirit, if not the letter of Puerto Rico's
14
    Department of Consumer Affairs Rental Regulation Number 2823, Section 6,
15
16  Article 10,[2] which limits the rent charged in connection with a lease of a gasoline

17  station to 10% of the market value of the station to be rented.  If "the station to

18  be rented" includes only that portion of the premises occupied the franchisee, the
19
    fair market value of that "station" could become quite small if Total leases a
20
21  significant portion of the premises to a third party.  In that situation, the full rental

22  price charged by Total may come to exceed 10% of the market value of the

23  remaining area occupied by plaintiffs.  This would contravene Regulation 2823.
24
    Accordingly, I find that Article 4.1 requires the franchisees to waive existing rights
25
26  under state law and is therefore impermissible under section 2805(f) in its present

27  _____

28          [2] This regulation is listed as current on the Microjuris legal database.
    Microjuris database, microjuris.com (last visited Jun. 16, 2009).

CIVIL 08-1950 (CCC)(JA)                    15
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

form.  Total is within its rights to lease portions of its station to third parties, but it may not insist that "the Retailer shall have no right to discounts or credits of any kind as a consequence" of such third party leases.

        2.    Additional Rent

      Article 4.4 of the Lease Agreement provides that the rent "may be increased to account for any additional investment [Total] may make . . . at its sole and absolute discretion."  (Docket No. 108-3, at 4.)  In Puerto Rico, "[t]he rules for determination of price in purchase and sales agreements are applicable to leases." In re Daben Corp., 469 F. Supp. at 148.  The rules for determination of price in purchase and sales agreements provide that "[t]he determination of the price can never be left to the judgment of one of the contracting parties."  P.R. Laws Ann. tit. 31, § 3745.  Here, the determination of rent is explicitly and exclusively left to the judgment of Total.  Under Article 4.4, if Total wishes to increase the rent charged to the retailer, it may do so unilaterally by an additional investment in the retail station.  The retailer would have no say in the matter.  There is no law prohibiting Total from investing in its service stations or from negotiating with its franchisees for a fair contribution to absorb the associated cost.  Article 4.4 of the

CIVIL 08-1950 (CCC)(JA)                     16
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

Lease Agreement is, however, invalid to the extent it allows Total to take these actions "at its sole and absolute discretion."

       3.     Restrictions on Products and Services Purchased

      Article 11.2 of the Franchise Contract provides that "[t]he Retailer agrees to purchase only from those suppliers and providers authorized by the Company. . . . " (Docket No. 155-4, at 15.)  Law No. 77 of June 25, 1964, created Puerto Rico's Office of Monopolistic Affairs, and vested it with the power "[t]o promulgate . . . such rules and regulations as may be necessary and proper for the enforcement of [the legislative Act on Monopolies and Restraint of Trade]."  P.R. Laws Ann. tit. 10, § 272(5).  The rules and regulations of the Office of Monopolistic Affairs "have the force of law" once approved.  Id.  Article 4(e) of Regulation I (Number 994) of the Office of Monopolistic Affairs was approved on August 19, 1965, in conformity with Law No. 77.  It is still effective.[3]  Article 4(e) provides that it is illegal, in a gasoline franchise relationship, "to compel or attempt to compel the retailers to sell products manufactured, distributed,

_____

     [3] The regulation is listed on the website of the Puerto Rico Department of Justice, http://www.justicia.gobierno.pr/rs_template/v2/AsuMon/ asumon_reg.html #0994 (last visited Jun. 15, 2009).  It is listed as current on the Microjuris legal database.  Microjuris database, microjuris.com (last visited Jun. 15, 2009).

CIVIL 08-1950 (CCC)(JA)                    17
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

endorsed, or in any way favored by the distributors."[4]   Total is thus proscribed

from requiring plaintiffs to sell the products it endorses or favors.  To the extent

it does so, Article 11.2 of the Franchise Contract is illegal.

> 4.      Non-Compete Agreements

Article 9.3 of the Franchise Contract prohibits the retailer from engaging in

"a convenience store type of business within the territorial jurisdiction of the

municipality where the Bonjour Franchise object of [the] agreement is located, or

any adjoining municipality" for "an additional period of twelve (12) months" after

the contract's expiration.  (Docket No. 155-4, at 11.)  Under Puerto Rico law,

noncompetition clauses are subject to four conditions.  Arthur Young & Co. v.

Vega III, 136 D.P.R. 157, 275, 1994 P.R.-Eng. 909,262, 15 (1994).  "First, the

employer must have a legitimate interest in [the] agreement, that is, if the

employer were not protected by a noncompetition clause, his business could be

seriously affected." Arthur Young & Co. V. Vega III, 136 D.P.R. at 175, 1994 P.R.-

Eng. at 15-16.  Here, Total has a valid commercial interest in protecting its brand

and its trade secrets, which are in the midst of a delicate transition phase in the

Puerto Rico market.  "Second, the scope of the prohibition must fit the employer's

---

[4] The court's translation.

CIVIL 08-1950 (CCC)(JA)                    18
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

interest, insofar as object, time, and place of the restriction or clients is concerned

. . . . The noncompetition term should not exceed twelve months . . . ."  Arthur

Young & Co. V. Vega III, 136 D.P.R. at 175, 1994 P.R.-Eng. at 16.  Here, the

Total's term is for exactly twelve months, and the clause circumscribes the

restrictions on the retailers to "convenience store type of business."  (Docket No.

155-4, at 11.)  "Third, the employer shall offer a consideration in exchange for the

employee signing the noncompetition covenant."  Arthur Young & Co. V. Vega III,

136 D.P.R. at 176, 1994 P.R.-Eng. at 17.  In the employment context, such

"consideration could even be that a candidate gets the position he wished for in

the company."  Id.  Analogizing this rule to the present franchise relationship

context, I find that it is sufficient that the franchisees got "the position [they]

wished for" as franchisees of the Total brand.  Finally, the fourth requirement of

Arthur Young –that the non-compete agreement be reduced to writing– has also

been satisfied here.  Id.  Accordingly, I find that the non-compete agreement is

valid under Puerto Rico law.

　　　　　5.　　Non-Branded Gasoline.

　　　　　Article 8.1 of the Sale and Supply Contract reserves for Total the right to

discontinue or substitute any engine fuel, petroleum product or any of the Total

CIVIL 08-1950 (CCC)(JA)                    19
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

Products for other products under a variety of enumerated reasons.  (Docket No. 155-5, at 8.)  I have addressed the issue of unbranded gasoline at length in my most recent opinion and order at Docket No. 287.  The ruling of that decision was based on plaintiffs' request for an injunction against the use of allegedly unbranded gasoline; it did not address the legality of Article 8.1.  The law and the reasoning I applied in that decision are nonetheless equally availing here, and I incorporate that opinion and order herein, *mutatis mutandis*.  Under the PMPA, there is no requirement that Total provide only gasoline refined by Total itself.  Accordingly, there is nothing illegal about Article 8.1.

D.    Severability

Given that Articles 4.1 and 4.4 of the Lease Contract and Article 11.2 of the Franchise Contract all violate section 2805(f) of the PMPA to some extent, the next issue is what remedy to afford plaintiffs.  I find that each of these clauses is severable to the extent they are declared invalid above.  Each of the three contracts offered by Total contains an explicit severance or "savings clause."  "[S]hould any provision in [the] Contract be found to be unlawful, invalid, or unenforceable under present or future laws, said provisions shall be nullified," and the contract should be treated as if the violative provision never existed.  (Docket

CIVIL 08-1950 (CCC)(JA)                    20
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

No. 108-3, at 23, art. 20.10.)  "[T]he rest of the provisions in [the] Contract shall

remain in force . . . ."  (Id.)  The First Circuit approves the use of a standard

"savings clause:"

> A "savings clause" preemptively resolves conflicts
> between contract language and applicable law in order to
> preserve the remaining, non-conflicting contract
> language.  "Savings clause" is somewhat of a misnomer.
> The contractual language in conflict with applicable law is
> not saved. The non-conflicting language is saved.  In the
> absence of a savings clause, the decision maker, be it an
> arbitrator or a court, decides the remedy for resolving a
> conflict between contract language and applicable law.
> That remedy, driven by an assessment of the intent of
> the parties, could be as small as severance of the
> offending contract language, or it could extend to outright
> non-enforcement of portions of the contract that include
> the offending contract language or the contract in its
> entirety.  In essence, a savings clause serves as an
> expression of the intent of the parties that limits the
> remedies an arbitrator or court may use in situations of
> conflict between contract terms and applicable law.

Kristian v. Comcast Corp., 446 F.3d 25, 48 n.16 (1st Cir. 2006) (severing a

portion of arbitration agreement where the savings clause in question

"emphasize[d] the use of severance as a remedy," and declaring the remainder

of the contract valid); see Cherena v. Coors Brewing Co., 20 F. Supp. 2d 282, 286

(D.P.R. 1998) (doing the same with regard to a non-competition covenant); see

also Coast Vill. v. Equilon Enter., LLC, 163 F. Supp. 2d at 1180 (citing Graham Oil

CIVIL 08-1950 (CCC)(JA)                    21
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

Co. v. ARCO Prods. Co., 43 F.3d 1244, 1248-49 (9th Cir. 1994)) ("[T]he Ninth

Circuit has expressly held that invalidation under Section 2805(f) does not lead

to invalidation of the entire agreement so long as the term(s) are severable from

the rest of the agreement.").  It is true that "a 'contract is entire, and not

severable, when, by its terms, nature, and purpose, it contemplates and intends

that each and all of its parts, and material provisions are common to the other,

and interdependent.'"  Graham Oil Co. v. ARCO Prods. Co., 43 F.3d at 1248

(quoting Hudson v. Wylie, 242 F.2d 435, 446 (9th Cir. 1957)).  Here, however,

the clear intent of the parties as expressed in the contract is that any invalid

terms be severed from the contract in order to save the remainder of the

agreement.    The essence of the agreement –the existence of a franchise

relationship– remains in tact in the absence of the three severable clauses.

Accordingly, those contract provisions that violate Puerto Rico law are to be

severed, while the remainder of the three contracts is binding and enforceable.

III.    SUMMARY

        Esso and Total have complied with the PMPA.  Total's franchise agreements

with the Group I plaintiffs are valid with the exception of the following provisions,

CIVIL 08-1950 (CCC)(JA)                    22
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

which are hereby PROHIBITED from appearing in any contract between the parties:

• Those portions of Article 4.1 of the Lease Contract that permit Total to lease to third parties parts or portions of the lands or structures where the station is located *without* allowing plaintiffs the right to discounts or credits.  (See Article 4.1 of the Lease Contract, Docket No. 108-3, at 3.)

• Those portions of Article 4.4 of the Lease Contract that permit Total to increase the minimum rent to account for any additional investment Total may make *at its sole and absolute discretion*.  (See Article 4.4 of the Lease Contract, Docket No. 108-3, at 4.)

• Those portions of Article 11.2 of the Franchise contract that require the retailer to purchase only those products and services manufactured, distributed, endorsed, or an any way favored by Total.  (See Article 11.2 of the Franchise Contract, Docket No. 155-4 at, 15.)

Finally, it is hereby ORDERED that partial, final, appealable judgment be entered in cases 08-1950, 08-1986, and 08-2025, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 54(b).  Such a judgment "as to fewer than all the claims [or parties] in a multi-claim action [is permissible] 'upon

CIVIL 08-1950 (CCC)(JA)                    23
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

an express determination that there is no just reason for delay.'" Quinn v. City of Boston, 325 F.3d 18, 26 (1st Cir. 2003) (quoting Fed. R. Civ. P. 54(b)).  The First Circuit bears a "long-settled and prudential policy against the scattershot disposition of litigation," Quinn v. City of Boston, 325 F.3d at 26 (quoting Spiegel v. Trs. of Tufts Coll., 843 F.2d 38, 42 (1st Cir. 1988)), but it will nonetheless tolerate such a disposition where a district court "make[s] specific findings and set[s] forth its reasoning," Quinn v. City of Boston, 325 F.3d at 26 (citing Spiegel v. Trs. of Tufts Coll., 843 F.2d at 42), or where "the record, on its face, makes it sufficiently apparent that the circumstances support an appeal from a partial judgment."  Quinn v. City of Boston, 325 F.3d at 26 (approving of partial final judgment where the claims upon which partial judgment was entered were distinct from the remaining claims, and where public interest favored immediate appeal) (citing Spiegel v. Trs. of Tufts Coll., 843 F.2d at 43 n.4).

Here, cases 08-1950, 08-1986, and 08-2025 were filed to enjoin Esso from terminating its Puerto Rico gasoline retail stations.  I have denied such an injunction, have concluded that Total and Esso are compliant with the PMPA, and have invoked the severance provisions of Total's franchise contracts in three instances.  As to those three cases, there is no just reason for delay because all

CIVIL 08-1950 (CCC)(JA)                    24
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

issues of any substance have now been ruled upon.  The public interest would best be served by the rapid resolution of any outstanding points of contention upon immediate appeal.  I abstain from entering final judgement in cases 08-2032 and 08-2044 because the parties in those cases reached an agreement in October 2008, over which I am to retain supervision and jurisdiction.  (Docket No. 81.)

V.    CONCLUSION

Total's motion (Docket No. 247) is GRANTED.  Esso's motion (Docket No. 248) is GRANTED to the extent it requests final judgment as to cases 08-1950, 08-1986, and 08-2025; it is DENIED to the extent it requests final judgment as to cases 08-2032 and 08-2044.  Total's motion to strike plaintiffs' informative memorandum (Docket No. 268) is DENIED.

There being no just reason for delay, the Clerk is ORDERED to enter partial final judgment as to cases 08-1950, 08-1986, and 08-2025 dismissing them in their entirety.

SO ORDERED.

At San Juan, Puerto Rico, this 23d day of June, 2009.

                              S/ JUSTO ARENAS
                    Chief United States Magistrate Judge