IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS ALFREDO SANTIAGO-
SEPÚLVEDA, et al.,

Plaintiffs

v.

ESSO STANDARD OIL COMPANY
(PUERTO RICO), INC., et al.,

Defendants

CIVIL 08-1950 (CCC)(JA)
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

OPINION AND ORDER

This matter is before the court on motions by plaintiffs from cases 08-1950,

08-1986, and 08-2025 to amend and/or vacate the partial final judgment that was

entered on June 30, 2009.  (Docket Nos. 288, 289, 291, 292.)  Plaintiffs from

cases 08-1950 and 2025 filed one of the motions pursuant to Federal Rules of

Civil Procedure 52(b), 59(e) and 60(b) on July 13, 2009, and plaintiffs from case

08-1986 filed the other pursuant to the same rules on the same day.  Defendant

Esso Standard Oil (Puerto Rico), Inc. ("Esso") filed a timely response in opposition

on July 27, 2009.  (Docket No. 295.)  For the reasons set forth below, plaintiffs'

motion is DENIED.

I.    PROCEDURAL AND FACTUAL BACKGROUND

As noted in the opinion and order granting partial final judgment, the facts

of this case have been recounted multiple times.  See Santiago-Sepúlveda v. Esso

CIVIL 08-1950 (CCC)(JA)                    2
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)


Standard Oil Co. (P.R.), 582 F. Supp. 2d 154, 156-74 (D.P.R. 2008); (Docket Nos. 118, 145, 149, 228, 288.)  Plaintiffs sought unsuccessfully to enjoin Esso from terminating their gasoline retail franchises.  Nearly all plaintiffs then entered into franchise agreements with Total.[1]  The judgment confirmed that Esso and Total had complied with the requirements of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq.*, in their dealing with plaintiffs.  (Docket No. 288, at 21.)  Pursuant to a severance clause within the franchise agreement executed between Total and plaintiffs, and in accordance with section 2805(f) of the PMPA, the judgment severed three provisions of the franchise agreement: one permitting Total to lease portions of the gasoline retail stations to third parties without a corresponding rent reduction to plaintiffs, one permitting Total to unilaterally increase the plaintiffs' rent by improving the stations, and one requiring plaintiffs to purchase for resale only those products and services endorsed or favored by Total.  The judgment did, however, find that two other questionable provisions were permissible under the PMPA and Puerto Rico law:

_____

[1] The franchise agreements consist of three separate contracts:  a Lease Contract, a Sale and Supply Contract, and a Franchise Contract for Total's convenience store enterprise known as "Bonjour" (the "Complimentary Contracts").  (Docket Nos. 155, at 3, 155-4.)

CIVIL 08-1950 (CCC)(JA)                    3
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

one placing non-competition restrictions on plaintiffs and one allowing Total to supply plaintiffs with "non-branded" gasoline for resale.

Plaintiffs now advance this motion to amend and/or vacate the judgment. They ask that the court make findings as to additional provisions of the franchise agreement, that it reconsider its finding that the non-compete agreement is valid, that it declare the franchise agreement null and void, and that it set aside the entry of judgment.  They also request that the court set a briefing schedule so plaintiffs can further elaborate on the issue of contract validity.

Plaintiffs complain that not every contractual provision that they opposed in their complaints has been addressed by the court.  Their complaints allege that the proposed franchise agreements are illegal because of the following terms: Total reserves the right to unilaterally change the rent charged to plaintiffs; Total charges a "transfer fee" to recover 60% of the "good will" value of the franchises; Total charges rental fees in excess of the amount permitted by Puerto Rico law; the franchise agreement allows Total to unilaterally terminate franchises without granting plaintiffs an opportunity to cure any deficiencies; Total requires that plaintiffs assume liability for fuel spills or leaks; Total requires that plaintiffs accept gasoline pumps, dispensers and other equipment as a "comodato," or gratuitous

CIVIL 08-1950 (CCC)(JA)                    4
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

bailment; Total failed to provide plaintiffs with an "offering circular" required by the Federal Trade Commission; and Total has not offered to compensate Plaintiffs for improvements plaintiffs have made in the leased premises.  (Docket No. 2.)  Not included in this list or addressed in this opinion and order are those provisions about which plaintiffs complained not because of the provisions' inherent illegality, but because they were allegedly discriminatory.  I have already found that Total's contract terms are not discriminatory.  Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.), 582 F. Supp. 2d at 182.

II.     STANDARD FOR A MOTION TO AMEND OR VACATE JUDGMENT

        "No matter how a party titles it, 'a post-judgment motion made within ten days of the entry of judgment that questions the correctness of a judgment is properly construed as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e).'"  Negrón-Almeda v. Santiago, 528 F.3d 15, 20 (1st Cir. 2008) (quoting Global Naps, Inc. v. Verizon New Eng., Inc., 489 F.3d 13, 25 (1st Cir. 2007)).  I accordingly treat plaintiffs' motion as such.  Nat'l Metal Finishing Co. v. BarclaysAm./Commercial, Inc., 899 F.2d 119, 122 (1st Cir. 1990) (the difference between Rule 59(e) and Rule 52(b) is not of "dispositive significance," but "Circuit precedent suggests that challenges to the correctness of a judgment are properly

CIVIL 08-1950 (CCC)(JA)                    5
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

construed as motions under Rule 59(e)."); <u>Vasapolli v. Rostoff</u>, 39 F.3d 27, 37

n.8 (1st Cir. 1994) ("Even if plaintiffs' post-judgment motion were to be

considered under Rule 60(b)(6) rather than Rule 59(e), the outcome would be the

same.").

"Rule 59(e) motions are granted only where the movant shows a manifest

error of law or newly discovered evidence." <u>Prescott v. Higgins</u>, 538 F.3d 32, 45

(1st Cir. 2008) (affirming denial of a Rule 59(e) motion where movant "merely

restate[d] the same arguments that he made in his opposition to summary

judgment and in his cross-motion for summary judgment.") (quoting <u>Kansky v.

Coca-Cola Bottling Co. of New Eng.</u>, 492 F.3d 54, 60 (1st Cir. 2007)). "[A] motion

for reconsideration should be granted if the court 'has patently misunderstood a

party . . . or has made an error not of reasoning but apprehension.'" Ruiz Rivera

v. Pfizer Pharms., LLC, 521 F.3d 76, 82 (1st Cir.), cert. denied, 129 S. Ct. 180

(2008) (quoting <u>Sandoval Díaz v. Sandoval Orozco</u>, No. 01-1022, 2005 WL

1501672, at *2 (D.P.R. June 24, 2005)).

In all events, "[d]istrict courts enjoy considerable discretion in deciding Rule

59(e) motions, subject to circumstances developed in the case law." <u>ACA Fin.

Guar. Corp. v. Advest, Inc.</u>, 512 F.3d 46, 55 (1st Cir. 2008) (citing

CIVIL 08-1950 (CCC)(JA)                    6
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

Venegas-Hernández v. Sonolux Records, 370 F.3d 183, 190 (1st Cir. 2004)).

They are not required to entertain "arguments which could, and should, have been

made before judgment issued." ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d at

55 (quoting F.D.I.C. v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992)).

Indeed, Rule 59(e) motions "may not be used to argue a new legal theory."

F.D.I.C. v. World Univ., Inc., 978 F.2d at 16.

III.    DISCUSSION

    A.    Severability

        The judgment in this case held that severance of the illegal terms of the

franchise contract was appropriate under the precedent of the First Circuit, the

District Court of Puerto Rico, and at least one other circuit.  (Docket No. 288, at

20 (citing Kristian v. Comcast Corp., 446 F.3d 25, 48 n.16 (1st Cir. 2006);

Cherena v. Coors Brewing Co., 20 F. Supp. 2d 282, 286 (D.P.R. 1998); Coast Vill.

v. Equilon Enter., LLC, 163 F. Supp. 2d 1136, 1180 (C.D. Cal. 2001) (citing

Graham Oil Co. v. ARCO Prods. Co., 43 F.3d 1244, 1248-49 (9th Cir. 1994))).

Plaintiffs argue, however, that the illegal terms should have invalidated the entire

contract.  Defendants point out that plaintiffs raise this argument for the first time

on their Rule 59(e) motion, and that such a motion may not serve as a vehicle for

CIVIL 08-1950 (CCC)(JA)                    7
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

arguments that "could, and should, have been made before judgment issued."

ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d at 55.  While it is true that plaintiffs

might have raised this point earlier, it is also true that the contract terms were not

invalidated until the judgment.  Thus, it was not certain that plaintiffs' argument

for invalidation of the entire agreement would be applicable until that time.

Plaintiffs might have recognized this outcome as a possibility earlier, but doing so

would have required a certain (albeit minimum) degree of foresight.  I grant

plaintiffs the opportunity to be heard on their argument here, bearing in mind that

doing so does not effect the outcome.

In support of its argument that the entire franchise agreement should be

invalidated, plaintiffs point to a contract clause providing that Total may terminate

the franchise for "a breach of any of the . . . terms" of the contract.  (Docket No.

291, at 12-13 (citing BONJOUR Franchise Contract at Article 18.1, Docket No.

155-4, at 24.))  They argue that "[i]f the breach of just one clause in any of the

contracts is sufficient to terminate all the contracts, then the illegality of one

clause should have the same effect over the entire contract."  (Docket No. 291,

at 13.)  Plaintiffs cite no law to support this contention or to distinguish the relied-

upon cases of the judgment.  The plaintiffs' belief in what "should" be is distinct

CIVIL 08-1950 (CCC)(JA)                           8
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

from what the law in fact is.  This argument does not demonstrate a "manifest

error of law."

        Plaintiffs next argue that an alleged lack of good faith by Total should

necessitate invalidation of the franchise agreement.  They point out that "[a] court

may treat only part of a term as unenforceable . . . if the party who seeks to

enforce the term obtained it in good faith and in accordance with reasonable

standards of fair dealing."  Broadley v. Mashpee Neck Marina, Inc., 471 F.3d 272,

275 (1st Cir. 2006) (quoting Restatement (Second) of Contracts § 184).

According to plaintiffs, the court must invalidate the entire franchise agreement

because of Total's alleged bad faith.  Plaintiffs argue that Total lacked good faith

because it presented its franchise offer to plaintiffs on a "take-it-or-leave-it" basis.

I have already held, however, that the fact "[t]hat Total offers the franchisees the

franchise agreements on a 'take-it-or-leave-it' basis is a business decision, good

or bad, right or wrong, which the court cannot supervise, alter or question, as

long as such a decision is devoid of bad faith."  Santiago-Sepúlveda v. Esso

Standard Oil Co. (P.R.), 582 F. Supp. 2d at 181 (citing Massey v. Exxon Corp.,

942 F.2d 340, 344-45 (6th Cir. 1991); Coast Vill., Inc. v. Equilon Enters., LLC,

163 F. Supp. 2d at 1148; S. Nev. Shell Dealers Ass'n v. Shell Oil Co., 725 F. Supp.

CIVIL 08-1950 (CCC)(JA)                    9
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

1104, 1109 (D. Nev. 1989); Jet, Inc. v. Shell Oil Co., 381 F.3d 627, 630 (7th Cir.

2004)).  Indeed, "'take it or leave it' notices such as the one here comply with the

PMPA when the franchisor's decision rests on economic grounds." Svela v. Union

Oil Co. of Cal., 807 F.2d 1494, 1499, 1501 (9th Cir. 1987) (quoting Baldauf v.

Amoco Oil Co., 553 F. Supp. 408, 412, 416-17 (W.D. Mich. 1981) ("So long as the

franchisor does not have a discriminatory motive or use the altered terms as a

pretext to avoid renewal, the franchisor has met the burden required by the PMPA

for determining good faith."); Meyer v. Amerada Hess Corp., 541 F. Supp. 321,

330 (D.N.J. 1982) ("The fact that new terms are presented on a take it or leave

it basis does not constitute a lack of good faith.")).   Plaintiffs have not

demonstrated that Total's offer rested on any grounds other than economic ones.

They have not demonstrated that the terms offered by Total were used as

subterfuge to discriminate against them.  In the absence of bad faith, there is no

basis for invalidating the entire agreement under Broadley v. Mashpee Neck

Marina, Inc., 471 F.3d at 275, because of a few invalid terms.

        Plaintiffs next contend that the clearly worded severability clause contained

in the franchise agreement may not save the agreement if the terms to be

severed are "essential" to the agreement.  The argument fails on its face because

CIVIL 08-1950 (CCC)(JA)                    10
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

plaintiffs cite no law binding on this court that might demonstrate an error of law. (Docket No. 292, at 10 (citing In re Oca, 552 F.3d 413, 424 (5th Cir. 2008); Erie Telecomms., Inc. v. City of Erie, 853 F.2d 1084, 1091-92 (3d Cir. 1988)). Moreover, the argument lacks rational merit, as none of the terms severed by the judgment were essential to the agreement.  The essence of the agreement was an accord by which plaintiffs would pay Total for the right to sell gasoline under the Total trademark.  That essence is not disturbed by allowing plaintiffs to purchase convenience store goods of their choosing, by preventing Total from subletting portions of the station to third parties without a corresponding reduction in rent charged to plaintiffs, or by preventing Total from unilaterally increasing the rent in the event it should make additional investment in the franchise.  See Kristian v. Comcast Corp., 446 F.3d at 53 (invalid, nonessential attorney's fees provision severable from arbitration agreement).

Finally, plaintiffs from case 08-1986 argue that the court "has actually rewritten the contracts" in that it "has instructed Total that it must reduce 'proportionally' the rent it charges plaintiffs when and if it subleases any part of the service station." (Civil 08-1950, Docket No. 291, at 16.)  Plaintiffs in case 08-1986 should not misquote me.  While plaintiffs contend that "the Court is not

CIVIL 08-1950 (CCC)(JA)                    11
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

merely . . . severing illegal clauses," the judgment has in fact done exactly that.

It "PROHIBITED . . . [t]hose portions of Article 4.4 of the Lease Contract that

permit Total to increase the minimum rent to account for any additional

investment Total may make at its sole and absolute discretion." (Docket No. 288,

at 22.)  It also "PROHIBITED" two additional clauses.  (Id.)  To prohibit a clause

without requiring some substitute language is to sever it; it is not to rewrite it.

Accordingly, plaintiffs have demonstrated no manifest error of law in the

judgment's preservation of the franchise agreement, and their request for

amendment of the judgment as to that issue is rejected.

B.    Legality of Terms

Plaintiffs request that I make findings as to the legality of contract terms not

explicitly addressed in the judgment.  They also ask for reconsideration of the

finding that the non-competition provision is valid.  As noted in the judgment,

section 2805(f) of the PMPA prohibits the inclusion of any term in the franchise

agreement that requires a franchisee to waive any right under state or federal

law.  15 U.S.C. § 2805(f).

1.    Unilateral Changes in Rent

CIVIL 08-1950 (CCC)(JA)                    12
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)


The judgment held that terms allowing for unilateral changes in rent by Total would not be permitted.  (Docket No. 288, at 22 (invalidating Article 4.1 of the Lease Contract to the extent it allowed Total to sublet portions of the station without entitling plaintiffs to discounts or credits, and invalidating Article 4.4 of the Lease Contract to the extent it permitted Total to unilaterally increase the rent to account for additional Total investments made at Total's sole and absolute discretion).  This is because, in the context of lease agreements in Puerto Rico, "[t]he determination of the price can never be left to the judgment of one of the contracting parties."  P.R. Laws Ann. tit. 31, § 3745.  Moreover, "[i]n a lease of things, one of the parties thereto binds himself to give to the other the enjoyment or use of a thing for a specified time and a *fixed price*."  P.R. Laws Ann. tit. 31, § 4012 (emphasis added).

It is evident upon close scrutiny of the franchise agreements that Articles 4.1 and 4.4 of the Lease Contract are not the only provisions that run afoul of Puerto Rico law.  Article 5.2 of the Sublease Agreement provides that "[t]he Company [Total] reserves the right to vary, at its entire discretion . . .  the rent to be paid . . . ."  (Docket No. 8-2, at 4).  Similarly, Article 4.2 of the Lease Contract provides that "The Company reserves the right to change, entirely at its

CIVIL 08-1950 (CCC)(JA)                    13
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

discretion, upon prior notice to the Retailer, the rent to be paid . . . ."  (Docket

Nos. 108-3, at 4, 108-5, at 4.)  As these provisions also impermissibly leave the

unfixed rental price "to the judgment of one of the contracting parties," they are

also impermissible and are hereby prohibited from appearing in any franchise

agreement between the parties.

> 2.    Non-competition Agreement

The judgment held that the non-competition agreement (Docket No. 155-4,

at 11, Article 9.3 of the Franchise Agreement) was valid under Puerto Rico law.

(Docket No. 288, at 18.)  The only source of law cited by plaintiffs to demonstrate

a manifest error of law in this decision is PACIV v. Pérez Rivera, 159 D.P.R. 523

(2003).   That Puerto Rico Supreme Court case is not available in English,

however, and plaintiffs have not submitted a certified English translation of it.

"Where a party makes a motion . . . based on a decision that was written in a

foreign language, the party must provide the district court with and put into the

record an English translation of the decision."  Puerto Ricans for P.R. Party v.

Dalmau, 544 F.3d 58, 67 (1st Cir. 2008) (holding that "the failure of defendants

to provide a translated copy of a critical decision alone warranted denial of their

1    CIVIL 08-1950 (CCC)(JA)          14
2    CIVIL 08-1986 (CCC)(JA)
3    CIVIL 08-2025 (CCC)(JA)
    CIVIL 08-2032 (CCC)(JA)
4    CIVIL 08-2044 (CCC)(JA)

motion.").  As plaintiffs have failed to provide the court with an English translation

of their case, a denial of their motion as to this issue is warranted.

Even assuming, *arguendo*, that the lack of English translation were not

outcome determinative, plaintiffs would still fail here on the merits.  It is true that

the non-competition agreement in PACIV v. Pérez Rivera, 159 D.P.R. at 529,

prohibited the plaintiff from being an owner, official, director, agent, consultant,

member, shareholder, or employee of the defendant's competitor, in much the

same way that Total's non-competition agreement prohibits plaintiffs from being

"an employee, officer, director, trustee, agent or partner of . . . any . . . legal

entity that is engaged in [a convenience store type of] business."  (Docket No.

155-4, at 11.)  The clause in PACIV, however, prohibited employment in *any*

*industry* regulated by the United States Food and Drug Administration.  Id. at 530.

The clause could, in other words, theoretically apply to employment opportunities

in all territories of the United States.  Here, on the other hand, the prohibition

extends merely to the municipality where the franchise is located, or to "any

adjoining municipality."  (Docket No. 155-4, at 11.)  Thus, PACIV is inapposite.

This case is better analogized to Lucas-Insertco Pharm. Printing Co. v.

Ronald Salzano, 124 F. Supp. 2d 27, 30 (D.P.R. 2000), where the court found an

CIVIL 08-1950 (CCC)(JA)                    15
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

employer's non-competition clause valid.  There, the geographical limitation prohibited "employment with companies providing printing services in Maryland, Northern Virginia, the District of Columbia, New Jersey, and Puerto Rico, areas where Plaintiffs were located; where it had commercial, pharmaceutical, or pharmaceutical printing customers; or where it was establishing operations." Id. at 30-31.  Despite such a wide-reaching geographical limitation, the court found the clause reasonable, as it was "consistent with the employer's legitimate interest in protecting its customer base while introducing a new sales and marketing person to the customers that had formerly been dealing with [the employee]." Id. at 30.  Similarly, Total has a legitimate interest in protecting its base as it introduces a new brand to Puerto Rico.  If the multi-state geographical restriction in Lucas-Insertco was permissible, so too is Total's limitation encompassing a few municipalities.

  *3. Goodwill Clause*

  Plaintiffs next contend that the goodwill clause of the Lease Contract is invalid.  (Docket No. 291, at 19.)  Article 9.4(b) of the Lease Contract provides that "[t]he Retailer expressly acknowledges that the Company [Total] has an interest in the goodwill of the gasoline sales business . . . ." (Docket No. 108-3,

CIVIL 08-1950 (CCC)(JA)                    16
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

at 11.)  "Said interest in the goodwill held by the Company is established at sixty

percent (60%) of the difference between the price of assigning the right to

operate the station proposed by the Retailer and the price paid by the Retailer

when he acquired said right to operate."  (Docket No. 108-3, at 11, Article

9.4(d).)  Thus, if a retailer opts to assign, or sell, its right to operate a retail

station, sixty percent of any surplus received in addition to the initial investment

is allocated to Total, and the remaining forty percent is remitted to the retailer.

The retailer will retain one-hundred percent of its initial investment in the station

that it recovers in the sale.  Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.),

582 F. Supp. 2d at 162.

Plaintiffs contend that this provision is illegal under Regulation I (Number

944) of Puerto Rico's Office of Monopolistic Affairs.  The regulation has the force

of law pursuant to Law No. 77 of June 25, 1964, P.R. Laws Ann. tit. 10, § 272(5).

It proscribes "any act by a distributor which tends to deprive a retailer of just

compensation for his effort . . . [to] increase . . . the 'Goodwill' of the gasoline

service station."[2]  Puerto Rico's Office of Monopolistic Affairs, Regulation I, Article

4(b).  Under a plain reading of the Regulation, it is not at all clear that Total's

_____

[2] Translation from Spanish to English supplied by plaintiffs.  (Docket No.
291, at 20.)

CIVIL 08-1950 (CCC)(JA)                17
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

goodwill term is impermissible.   Indeed, plaintiffs are granted significant percentage of the goodwill earned under the term.  It seems a stretch to say plaintiffs are "deprived of just compensation" when they are in fact compensated for the goodwill.

Furthermore, there is reason to believe, based on the context of the Regulation as a whole, that the Office of Monopolistic Affairs' regulatory provision was intended to control only franchise termination, not the assignment of franchising rights from one franchisee to another.  Article 4(a), which immediately precedes the goodwill provision in the text of the Regulation, is dedicated to the proscription of arbitrary franchise *termination*, and says nothing of franchise assignments.  In fact, nowhere in the regulation is there any mention of franchise assignment.  In this sense, the Regulation appears to parallel the PMPA itself, whose main purpose is to protect the franchisee from being deprived of *all* of its goodwill (not just sixty percent of it) as a result of unfair *termination*.  Draeger Oil Co. v. Uno-Ven Co., 314 F.3d 299, 299-300 (7th Cir. 2002) (Judge Richard Posner observing that the PMPA's "theory . . . is that a franchised dealer in effect invests in the franchisor's trademarks and as a result creates goodwill for the franchisor which the latter might on occasion be tempted to appropriate by

CIVIL 08-1950 (CCC)(JA)                    18
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

terminating the franchisee."). Here, Total's goodwill provision governs only franchise assignment, and there is thus much room for doubt that Puerto Rico's Regulation even applies here.

Finally, "[g]oodwill . . . benefits *both* parties." Marcoux v. Shell Oil Prods. Co., 524 F.3d 33, 39 n.2 (1st Cir. 2008), cert. granted, 129 S. Ct. 2788 & 2789 (2009) (emphasis added). A gasoline franchisor has a vested interest in the gas station's goodwill, just as the franchisee does. Total Petroleum P.R. Corp. v. Colón-Colón, 577 F. Supp. 2d 537, 552 (D.P.R. 2008). A franchisor contributes its own valuable brand and trademarks, its expertise, and in many instances its own equipment and real property to the franchise. To say the franchisor is not entitled to any compensation for the increased franchise value generated by these contributions is irrational, and Total's goodwill clause thus is appropriate under state and federal law.

### 4.  Grounds for Franchise Termination

Plaintiffs have also complained that the franchise agreement is Draconian in that the breach or termination of the convenience store contracts will result in the automatic termination of the Supply Agreement. (Docket No. 155, at 4, 13.) Plaintiffs raised this argument prior to the judgment, and it has not been ruled

CIVIL 08-1950 (CCC)(JA)                    19
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

upon, so it is addressed at this time.  The term plaintiffs cite provides that the Sale and Supply Contract will be terminated "[f]or any occurrence of noncompliance or violation of the material terms and conditions in the Complementary Contracts or if any of those contracts is cancelled or terminated[.]"  (Docket No. 155-5, at 14, Sale and Supply Contract, Article 16.1(g).) Article 16.1 provides, however, that the "Contract may be cancelled and terminated upon the appropriate prior notices required *under the PMPA*. . . ." (Id. at 13.) (emphasis added).  Thus, contract termination by Total is not unregulated.

Plaintiffs complain that Article 16.1 would allow Total to terminate their contract for something as minor as, for instance, failure to attend a training seminar.  This is not so, however, as the provision only applies to violation of "*material* terms." (Id. 16.1(b)) (emphasis added).  Plaintiffs need not, therefore, fear arbitrary termination for minor offenses.  Indeed, the prevention of such terminations is the very premise behind the PMPA, which would shield plaintiffs in the event of such a termination.  Marcoux v. Shell Oil Prods. Co., 524 F.3d at 39.  Accordingly, Article 16.1 is permissible and need not be severed.

     *5.   Federal Trade Commission Franchisor Disclosure Statement*

CIVIL 08-1950 (CCC)(JA)                    20
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

Plaintiffs next contend that Total failed to furnish them with a copy of a franchisor disclosure statement, or "offering circular," pursuant to Federal Trade Commission ("FTC") regulations when it submitted the franchise offer to plaintiffs. This argument also was raised prior to the judgment, so it also merits consideration here.  Plaintiffs contend that Total's omission was in violation of FTC regulations and was therefore also a violation of section 2805(f) of the PMPA because it amounted to Total requiring plaintiffs to waive their right to the disclosure as a prerequisite for entering a franchise agreement.  (Docket No. 155, at 17.)  The FTC regulation provides that it is a "violation of Section 5 of the Federal Trade Commission Act: . . . [f]or any franchisor to fail to furnish a prospective franchisee with a copy of the franchisor's current disclosure document . . . ."  16 C.F.R. § 436.2(a).  It also provides, however, that "the provisions of part 436 shall not apply if the franchisor can establish [that] . . . [t]he franchise relationship is covered by the Petroleum Marketing Practices Act, 15 U.S.C. [§] 2801."  16 C.F.R. § 436.8(4).

Plaintiffs argue that the PMPA does not apply to the "Bonjour" Franchise Contract, and that the exception to section 436.2(a) therefore does not apply. (Docket No. 155, at 18.)   The "franchise relationship" refers to the mutual

CIVIL 08-1950 (CCC)(JA)                    21
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

obligations of the parties "which result from the marketing of motor fuel under a franchise."  15 U.S.C. § 2801(2).  I have already held that the parties' franchise relationship as a whole is governed by the PMPA.  (Docket No. 287, at 10-12.) The Bonjour Franchise Contract is a part of that relationship and it therefore fits the FTC exception to the offering circular requirement.  As noted above, the Bonjour Franchise Contract is one of the "Complementary Contracts." It provides that:

> *As part of the agreements reached in the Complementary Contracts and as an incidental and complementary relationship to the operation of the station*, the parties have agreed to enter into a franchise agreement for the opening and operation of a BONJOUR convenience store . . . .

(Docket No. 155-4, at 1, ¶ C) (emphasis added).  It further states:

> The purpose of this contract is to create a comprehensive operation of the station and all businesses operating within the premises or land where it is located, and said operations may only be separated in those cases in which the Company [Total] decides that it is convenient . . . .

(Id. ¶ B.)  Finally, the Bonjour Franchise Contract provides that its termination is to be "under the provisions of the PMPA."  Accordingly, the Bonjour Franchise Contract is part of the franchise relationship that is covered by the PMPA, and Total was exempt from providing a franchisor disclosure statement, or offering

CIVIL 08-1950 (CCC)(JA)                    22
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

circular, under 16 C.F.R. § 436.2(a).  See Millet v. Union Oil Co., 24 F.3d 10, 15

(9th Cir. 1994) (agreements for auto repair shops that compliment gasoline retail

franchises "are sufficiently related to the [franchisor's] motor fuel franchises to

come within the meaning of the PMPA. . . .").

> *6.    Other Provisions*

In their complaints, plaintiffs took issue with assorted contractual provisions

not yet addressed by the court.  They claimed that "Total imposes rental fees in

excess of the maximum allowed under Puerto Rico laws and regulations;" that

Total requires that plaintiffs assume liability for fuel spills or leaks; that Total

requires that plaintiffs accept gasoline pumps, dispensers and other equipment as

a "comodato," or gratuitous bailment; and that Total has not offered to

compensate, and has not compensated, plaintiffs for making improvements in the

leased premises.[3]  (Docket No. 2, at 4, ¶ f, at 5, ¶¶ h, i, m.)  At no point in this

---

[3] Plaintiffs also complained that Total required them to maintain insurance policies and offer personal guarantees that were more onerous than plaintiffs' arrangements under their previous franchises with Esso. (Docket No. 2, at 5, ¶¶ j, k.)  Total is not, however, legally obligated to offer terms similar to those available to plaintiffs under their previous franchises.  Total need only offer terms that are legal and nondiscriminatory.  Here, plaintiffs do not argue that these two terms are illegal, and as noted, *supra*, I have already held that Total's offers are not discriminatory.  Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.), 582 F. Supp. 2d at 182.

CIVIL 08-1950 (CCC)(JA)                    23
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

litigation, however, have plaintiffs submitted any legal authority or factual support

to bolster the contention that any of these provisions are impermissible under

section 2805(f) of the PMPA.  "A Rule 59(e) motion is not properly used to 'raise

arguments which could, and should, have been made before judgment issued.'"

Yeomalakis v. F.D.I.C., 562 F.3d 56, 61 (1st Cir. 2009) (quoting Harley-Davidson

Motor Co. v. Bank of New Eng., 897 F.2d 611, 616 (1st Cir. 1990)).  Accordingly,

these arguments are not appropriately considered on a Rule 59(e) motion.

          C.     Request for Briefing Schedule

          Plaintiffs have asked that the court set a briefing schedule so that they may

somehow further elaborate on the legality of the contracts offered by Total.  They

have had eleven months, however, to litigate the issue.  They have had the

opportunity to conduct a three-day trial.  They have submitted no less than six

different briefs that address the legality of Total's proffered franchise agreements,

not including their complaints.  (Docket Nos. 8, 80, 155, 249, 291, 292.)

Plaintiffs' motion for summary judgment and for dismissal of defendants'

counterclaims in particular set forth a lengthy discussion of contract legality.

(Docket No. 155.)  Plaintiffs' contention that they have lacked the opportunity to

argue this issue is therefore confounding.  "A Rule 59(e) motion is not properly

CIVIL 08-1950 (CCC)(JA)                    24
CIVIL 08-1986 (CCC)(JA)
CIVIL 08-2025 (CCC)(JA)
CIVIL 08-2032 (CCC)(JA)
CIVIL 08-2044 (CCC)(JA)

used to 'raise arguments which could, and should, have been made before judgment issued.'"   Yeomalakis v. F.D.I.C., 562 F.3d at 61 (quoting Harley-Davidson Motor Co. v. Bank of New Eng., 897 F.2d at 616).   Plaintiffs' request begs the question; if plaintiffs had further issues to litigate, why did they not simply address those issues in the motions?   If they could address some issues in the motions, why could they not address all of them?   A briefing schedule would only delay the inevitable, and plaintiffs' request for such a schedule is therefore denied.

IV.   CONCLUSION

In light of the above, plaintiffs' motion to amend the judgment is DENIED. Total is reminded, however, that any contractual term granting Total the right to unilaterally increase the rent charged to its franchisees is prohibited.   This includes Article 5.2 of the Sublease Agreement and Article 4.2 of the Lease Contract.

SO ORDERED.

At San Juan, Puerto Rico, this 30th day of July 2009.

S/ JUSTO ARENAS
Chief United States Magistrate Judge